UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————

URBAN JUSTICE CENTER-SAFETY NET
PROJECT (UJC-SNP), and LAETICIA MIGUEL,
individually, and on behalf of all persons similarly situated,

                         Plaintiffs,                            Civ.

      v.                                          **COMPLAINT**

BROOKE ROLLINS, in her official capacity as
Secretary of the U.S. Department
of Agriculture (USDA),

                         Defendant.

————————————————————————

## PRELIMINARY STATEMENT

1.      On October 3, 2025, the US Department of Agriculture (USDA), acting without any legal authority, issued a notice purporting to prematurely terminate a waiver of federal work requirements for recipients of SNAP (Supplemental Nutrition Assistance Program) who are classified as Able-Bodied Adults Without Dependents (ABAWDs), effective November 2, 2025.

2.      The ABAWD waiver was issued on October 2, 2024, and approved to run through February 28, 2026, based on a lack of sufficient jobs in 61 New York counties including the five boroughs of New York City.

3.      As a result of Defendant's unlawful action, over 100,000 New York City SNAP recipients classified as ABAWDs will be given notice on or about November 2, 2025, that they will have to find employment or begin participation in approved work programs by December 1, 2025. Those unable to comply with federal work requirements within that brief 30-day period

will risk termination of the SNAP benefits on which they rely to feed themselves and their families.

4.      Under SNAP regulations, recipients subject to the ABAWD work requirements who fail to comply with those requirements for three months during a state-defined three-year period face termination of their benefits. Recipients who are unable to comply with the 30-day notice mandated by USDA's unlawful directive will begin to accrue "countable months" toward their three-month limit starting in December 2025.

5.      Prior to October 3, the NYC Human Resources Administration (HRA), which is tasked with administering the SNAP program in New York City, had planned to reinstitute the three-month ABAWD time limit in an orderly manner to coincide with the original expiration of its USDA waiver on February 28, 2026. USDA's directive compels HRA to begin enforcement of SNAP ABAWD time limits in 30 days instead of 120 days, a time frame that will lead to administrative chaos and numerous administrative errors, placing recipients at high risk of erroneous deprivation of food assistance benefits.

6.      This sudden, premature, and unlawful action will harm plaintiffs and the proposed class. The NYC Department of Social Services (DSS) attests that the abbreviated time frame presents innumerable obstacles to an orderly rollout of ABAWD time limits and work rules.  DSS must immediately mail out 100,000 letters, translated into 15 languages, reconfigure four different computer systems, screen 100,000 clients for possible exemptions on top of over 50,000 already scheduled November appointments, and mandate that six newly-retained contractors schedule 6,200 work appointments per day in November.

7.      As a result of USDA's action, therefore, thousands of ABAWD SNAP recipients will begin accruing noncompliant months beginning in December 2025. Those who cannot bring

themselves into compliance by February 1 will lose their SNAP benefits as of March 1, 2026. Even those who manage to comply by February may still accrue one or two countable months which will accelerate the termination of their benefits if they are unable to continue compliance at any time in the future.

8.      USDA's action finds no authorization in the SNAP Act, in H.R.1, known as the "One Big Beautiful Bill" Act of 2025, in USDA's regulations, or in the text of New York's ABAWD waiver granted by USDA in 2024, and is therefore actionable under the Administrative Procedure Act because it is contrary to law. Additionally, USDA failed to consider important aspects of the problems its actions were intended to address, such as the difficulty of re-implementing the ABAWD time limit on 30 days' notice and the impact of such an abrupt policy change upon thousands of indigent SNAP recipients in New York.

9.      Accordingly, Plaintiffs individually and as a class seek to enjoin the defendant federal agency from terminating New York's ABAWD waiver on November 2, 2025, in advance of its scheduled termination date on February 28, 2026.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction pursuant to the Food Stamp Act, 28 U.S.C. § 1331, as amended by the Personal Responsibility Work Opportunity Reconciliation Act ("PRWORA"), 7 U.S.C. § 2016(h)(7), and the Administrative Procedure Act, 5 U.S.C. § 551 *et seq*.

11.      Venue is proper in this court pursuant to 28 U.S.C. § 1391 because the Southern District of New York is the location where the events giving rise to the plaintiffs' claim have occurred.

12.     Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202 and by Rule 57 of the Federal Rules of Civil Procedure. Injunctive relief is authorized by Rule 65 of the Federal Rules of Civil Procedure and by the Court's equitable authority.

## PARTIES

**Plaintiffs**

13.     Plaintiff Urban Justice Center-Safety Net Project is a nonprofit organization that provides legal assistance, including assistance with SNAP applications and maintenance of benefits, to low-income residents in New York City. Its principal place of business is 40 Rector Street, New York, New York.

14.     Plaintiff Laeticia Miguel lives in Queens, New York with her husband. They currently both receive SNAP benefits, but Ms. Miguel is classified as ABAWD and will be subject to the ABAWD time limits as a result of USDA's waiver revocation.

**Defendant**

15.     Defendant Brooke Rollins is the Secretary of the U.S. Department of Agriculture, the agency responsible for regulating SNAP benefits through its Food and Nutrition Service Department. Defendant Rollins is sued in her official capacity.

## STATUTORY AND REGULATORY CONTEXT

**The SNAP Program**

16.     In 1964, Congress established the federally funded, state-administered Food Stamp Program in order to "safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households," and to "permit low income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power for all eligible households who apply for participation." 7 U.S.C. § 2011; 7 C.F.R. § 271.1.

18.     In 2008, this federal Food Stamp Program was renamed the Supplemental Nutrition Assistance Program, and the federal Food Stamp Act was renamed the Food and Nutrition Act of 2008 ("SNAP Act"). Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, §§ 4001–02, 122 Stat. 1853 (2008).

19.     Analysts consider SNAP to be the nation's "most effective tool for combating hunger."  Center on Budget and Policy Priorities, "SNAP Is and Remains Our Most Effective Tool to Combat Hunger," February 14, 2023. https://www.cbpp.org/blog/snap-is-and-remains-our-most-effective-tool-to-combat-hunger. SNAP "plays a critical role in reducing poverty, improving health and economic outcomes, supporting people who are paid low wages, and serving as the first line of defense against hunger during economic downturns. Access to SNAP provides families with the money they need to purchase groceries, freeing up their limited resources to spend more on other basic needs such as housing, utilities, and medical and child care." *Id.* SNAP is linked to improved outcomes for education, economic security, and self-sufficiency, as well as with improved health outcomes and lower medical costs. *Id.*

20.     Regulations promulgated by the USDA Food and Nutrition Service (FNS) implement the SNAP Act, applicable to all agencies administering SNAP programs. *See* 7 U.S.C. §§ 2013(c); 2020 (e)(6)(A).

21.     SNAP Eligibility is restricted to low-income households. 7 U.S.C. § 2014(c); 7 C.F.R. § 273.9(a)(2). Participation in SNAP is "limited to those households whose incomes and other financial resources . . . are determined to be a substantial limiting factor in permitting them to obtain a more nutritious diet." 7 U.S.C. § 2014(a).

22.    Federal law provides that SNAP benefits are an entitlement for those who apply and are eligible: "Assistance under this program shall be furnished to all eligible households who make application for such participation." 7 U.S.C. § 2041(a).

23.    Federal law also requires that the state agency "provide timely, accurate, and fair service to applicants for and participants in the supplemental nutrition assistance program." 7 U.S.C. § 2020(e)(2)(B)(i).

24.    The maximum SNAP benefit is adjusted on an annual basis by USDA each October. For the period October 1, 2025, through September 30, 2026, the maximum benefit for one person is $298, and for a family of three is $785. 7 C.F.R. § 273.9(a)(3); *see also* USDA Memorandum to All SNAP Agencies, "SNAP-Fiscal Year 2023 Cost-of-Living-Adjustments" August 9, 2022, *available at* https://www.fns.usda.gov/snap/fy-2023-cola.

25.    Although SNAP is a federally funded program, state agencies are responsible for administering the benefit within each state. 7 U.S.C. § 2020(a)(1); 7 C.F.R. § 271.4.

26.    In New York State, the State agency responsible for administering benefits is the Office of Temporary and Disability Assistance (OTDA). The New York State Social Services Law and OTDA's regulations and policies govern the administration of the SNAP program in New York. In New York City, the Department of Social Services' Human Resources Administration (HRA) administers the SNAP program. NY Soc. Serv. Law § 62(1); see also N.Y. Soc. Serv. Law § 56.

**ABAWD Work Requirements**

27.    SNAP participants classified as ABAWD must comply with SNAP general work requirements and additional ABAWD work requirements. SNAP ABAWD work requirements and penalties were first introduced in 1996 through the Personal Responsibility and Work

Opportunity Reconciliation Act (PRWORA). Under this law, certain adults ages 18–49 without dependents were limited to three months of SNAP benefits every three years unless they met a 20-hour-per-week work requirement or qualified for an exemption. These requirements are codified at 7 USC § 273.24.

28.     In 2023, the Fiscal Responsibility Act (FRA), H.R.3746 - 118th Congress (2023-2024), expanded the age range to include adults 50–54 and added temporary exemptions for veterans, individuals experiencing homelessness, and former foster youth under 24. These changes were set to expire in 2030.

29.     Until July 2025, SNAP recipients were exempt from the ABAWD work requirements if they were:

(1) Under 18 or 55 years of age or older;

(2) Determined by the State agency to be medically certified as physically or mentally unfit for employment. An individual is medically certified as physically or mentally unfit for employment if he or she:

(i) Is receiving temporary or permanent disability benefits issued by governmental or private sources;

(ii) Is obviously mentally or physically unfit for employment as determined by the State agency; or

(iii) If the unfitness is not obvious, provides a statement from a physician, physician's assistant, nurse, nurse practitioner, designated representative of the physician's office, a licensed or certified psychologist, a social worker, or any other medical personnel the State agency determines appropriate, that he or she is physically or mentally unfit for employment.

(3) A parent (natural, adoptive, or step) of a household member under age 18, even if the household member who is under 18 is not himself eligible for SNAP benefits;

(4) Residing in a household where a household member is under age 18, even if the household member who is under 18 is not himself eligible for SNAP benefits;

(5) Otherwise exempt from work requirements under section 6(d)(2) of the Food and Nutrition Act of 2008, as implemented in regulations at § 273.7(b);

(6) Pregnant;

(7) Homeless, as defined in § 271.2 of this chapter;

(8) A veteran, defined as an individual who, regardless of the conditions of their discharge or release from, served in the United States Armed Forces (such as Army, Marine Corps, Navy, Air Force, Space Force, Coast Guard, and National Guard), including an individual who served in a reserve component of the Armed Forces, or served as a commissioned officer of the Public Health Service, Environmental Scientific Services Administration, or the National Oceanic and Atmospheric Administration; or

(9) An individual who is 24 years of age or younger and who was in foster care under the responsibility of any State, District, U.S. Territories, Indian Tribal Organization, or Unaccompanied Refugee Minors Program on the date of attaining 18 years of age, including those who remain in extended foster care in States that have elected to extend foster care in accordance with section 475(8)(B)(iii) of the Social Security Act (42 U.S.C. 675(8)(B)(iii)) or those who leave extended foster care before the maximum age.

 See 7 CFR § 273.24(c).

30.    SNAP recipients classified as ABAWDs who are not exempt must work 80 hours per month or participate in a work program for the lesser of 80 hours per month or their monthly benefit divided by the state minimum wage. Working includes work in exchange for money or for goods or services ("in kind" work); or unpaid (volunteer) work. SNAP recipients may also participate in a "work program," including a State employment and training (E&T) program which may contain job search, supervised job search, or job search training as subsidiary activities as long as such activity is less than half the requirement, or in a "workfare" program under 7 CFR § 273.7(m) or its state equivalent. See 7 CFR § 273.24(a)(1).

31.    SNAP recipients subject to the ABAWD work requirements who fail to comply with them for three months (not necessarily consecutive) face a steep penalty. They lose eligibility for SNAP benefits for any month thereafter in which they fail to meet the ABAWD work requirements for the balance of the three-year period established by their State, known as a "clock". 7 CFR § 273.24(b)(3).

32.    SNAP recipients who lose eligibility after accruing three countable months of alleged noncompliance may regain eligibility by complying with ABAWD work requirements in a subsequent month. 7 CFR § 273.24(b). However, failure to continue compliance with work requirements will again result in termination after three subsequent months of alleged noncompliance. After this, the recipient loses eligibility to receive SNAP for the remainder of the State three-year period without continual engagement in work activity. See, 7 CFR §§ 273.24(d) and (e). Thus, the accrual of "countable months" has lasting legal and practical consequences for recipients throughout the pending three-year period.

33.    New York State established a three year "fixed statewide clock" running from October 2023 through September 2026. OTDA Administrative Directive Memo 25-ADM-03.

**SNAP ABAWD Waivers**

34.    Until July 2025, states were eligible to apply to USDA for waivers of the ABAWD work requirements due to a "lack of sufficient jobs," based on evidence that an area "is designated as a Labor Surplus Area (LSA) by the Department of Labor's Employment and Training Administration (ETA); is determined by the Department of Labor's Unemployment Insurance Service as qualifying for extended unemployment benefits; has a low and declining employment-to-population ratio; has a lack of jobs in declining occupations or industries; is described in an academic study or other publications as an area where there are lack of jobs; has a 24–month average unemployment rate 20 percent above the national average for the same 24–month period." 7 CFR § 273.24(f).

35.    USDA has issued ABAWD waivers to New York State under the insufficient jobs provision every year since at least 2020 due to the COVID-19 national emergency. Statewide or

partial state waivers were in effect prior to that time as well. In fact, since the initial promulgation of the ABAWD time limit in the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA), the time limit has almost never been in effect in New York City either due to local or statewide waivers, or a national suspension of all SNAP work requirements in response to the Great Recession.

36.    New York State applied for its current waiver on September 12, 2024, based on a showing that the aggregate average unemployment rate for 61 New York Counties during the 24-month period of February 2022 through January 2024 was 4.3 percent, which was 20 percent above the national average unemployment rate for this period of 3.6 percent.

37.    Notably, the average unemployment figures for the five counties comprising New York City were even higher than the statewide average: Bronx County – 7.2 percent; Kings County – 5.6 percent; New York County – 4.5 percent; Queens County – 4.8 percent; and Richmond County – 4.2 percent.

38.    On October 2, 2024, USDA approved New York's request as to 61 counties (including the five boroughs of New York City), noting that these counties had "an aggregate average unemployment rate 20 percent above the national average for the 24-month period of February 2022 through January 2024. During this period, the national average unemployment rate was 3.6 percent; 20 percent above that rate is 4.3 percent. The average unemployment rate for the combined area was 4.3 percent during the 24-month period."  The expiration date of the waiver was February 28, 2026.

**The July 2025 "One Big Beautiful Bill"**

39.     On July 4, 2025, President Trump, signed H.R.1, titled the "One Big Beautiful Bill Act of 2025" ("OBBB"), into law. The legislation, in Section 10102, significantly limited prior exemptions from SNAP ABAWD work requirements, exposing millions of SNAP recipients to the threat of benefit termination. The legislation policy removes exemptions from:

    a)  adults up to age 65;

    b)  parents, grandparents, or caregivers of children ages 14 or older;

    c)  veterans;

    d)  adults experiencing homelessness, including homeless families with teenage children;

    e)     youth aging out of foster care.

40.     H.R.1 also narrowed the long-standing option for states to receive waivers based on a "lack of sufficient jobs," deleting clause (ii) in 7 USC § 2015(o)(4)(1)(A), a provision that many states relied on for nearly three decades to protect residents in areas with limited employment opportunities. Under the new law, an area now qualifies for a waiver only if its unemployment rate exceeds 10 percent. Alaska and Hawaii were granted separate provisions allowing them greater flexibility in applying for waivers.

41.     However, notably, H.R.1 contains no authorization for USDA to terminate any *pre-existing* waivers prior to their expiration date.

**USDA's Waiver Terminations**

42.     On September 4, 2025, USDA issued an "Information Memorandum" regarding the "Supplemental Nutrition Assistance Program Provisions of the One Big Beautiful Bill Act of

2025." The memorandum outlined the expansion of the categories of recipients defined as ABAWD and the limitations on future waivers of work requirements.

43.    However, the September 4 memorandum made no mention of any intention to terminate existing waivers prior to their termination dates. See, https://fns-prod.azureedge.us/sites/default/files/resource-files/OBBB-SNAP-Provisions-Implementation-Memo.pdf.

44.    On October 3, 2025, USDA abruptly announced that it was terminating existing ABAWD waivers based on the "lack of sufficient jobs" criterion effective November 2, 2025. https://fns-prod.azureedge.us/sites/default/files/resource-files/OBBB-Implementation%20Memo-ABAWD-Waivers.pdf. The October 3 memorandum further encouraged states to voluntarily terminate their existing waivers "as soon as possible" – presumably even prior to November 2.

45.    The October 3 memorandum states that:

FNS will terminate any such ABAWD waivers 30 days after issuance of this memorandum. State agencies with a currently approved ABAWD waiver based on the lack of sufficient jobs criterion that expires on or before November 2, 2025, do not need to take further action to terminate.

Prior to termination, State agencies must prepare to enforce the time limit in areas which will no longer have ABAWD waivers. At a minimum, these activities include updating eligibility systems, notifying SNAP households of the time limit, and training eligibility workers.

FNS strongly encourages State agencies to fully implement the work requirements and not seek waivers. Able-bodied adults have ample opportunities to re-engage with their communities even in areas with relatively high unemployment through other activities that meet the requirement. Additionally, State agencies must screen each work registrant to determine if it is appropriate, based on the State agency's criteria, to refer the individual to a SNAP Employment and Training program per 7 CFR 273.7(c)(2).

46.    Thus, USDA directed States to begin enforcing ABAWD time limits and assessing countable months for failure to meet the ABAWD work requirements, while at the same time acknowledging that State agencies are expected to provide notice to thousands of

recipients, train or retrain their workers, screen each "work registrant," and be prepared to provide referrals to employment and training programs so that recipients will have "ample opportunities" to engage in work activities.

47.     Pursuant to USDA's memorandum, SNAP recipients classified as ABAWD who fail immediately to comply with ABAWD work requirements will begin to incur "countable months" beginning in December 2025.

**The Waiver Termination's Impact on New York City**

48.     In New York State, all social services districts, including those that qualify for a waiver of the ABAWD time limit, must evaluate each SNAP applicant's and recipient's employability status and ABAWD status and enter the appropriate SNAP employability and ABAWD status codes in OTDA's Welfare Management System (WMS). Districts that do not have an approved ABAWD waiver for all residents of the district must offer and provide qualifying work activity to assist ABAWDs in maintaining their SNAP eligibility, monitor each ABAWD's compliance with the work requirements on a monthly basis, and notify a SNAP household when an ABAWD becomes ineligible for SNAP due to noncompliance with the ABAWD work requirements. See OTDA Memorandum 25-ADM-03.

49.     The offer of a qualifying work or training opportunity must be provided at certification, recertification, and anytime during the certification period when an individual's status changes and they become subject to the ABAWD time limit. Districts must provide ABAWDs with a scheduled appointment to meet with a district staff member or contracted employment provider for the purpose of offering them the opportunity to engage in a qualifying work activity assignment so that they may retain eligibility for SNAP benefits beyond the three-month time limit. 25-ADM-03 at 14.

50.     When an ABAWD attends the appointment and requests the district's assistance with providing an ABAWD-qualifying work activity, staff from the district's employment unit or contracted employment vendor must meet with the individual to assign an appropriate activity that will satisfy the ABAWD work requirements. SNAP E&T activity assignments must be approved by the district. Individuals participating in SNAP E&T on a mandatory or voluntary basis must also receive case management and necessary supportive services directly related to their engagement in SNAP E&T work activities. *Id.*

51.     OTDA issued a revised directive on October 23, 2025, directing all districts, including New York City, to give notice of the reimposition of ABAWD time limits and penalties to all current ABAWDs by November 1, 2025. See, 25-ADM-03-P. https://otda.ny.gov/policy/directives/2025/ADM/25-ADM-03-P.pdf. OTDA emphasizes that "tracking of countable months for the current ABAWD population in all districts excluding Saratoga County will begin 12/1/2025." *Id.* at p. 17.

52.     The NYC Human Resources Administration estimates that over 100,000 individuals are currently classified as ABAWD who will immediately become subject to ABAWD work requirements on November 2, 2025.

53.     HRA announced on October 21 that it planned to issue notices to thousands of SNAP recipients classified as ABAWD, inviting them to call HRA if they believe they should be exempt from work requirements. In addition, HRA plans to send thousands of letters scheduling appointments with six "PACE" agencies with nine contracts who are entrusted with finding qualifying work activities for SNAP recipients classified as ABAWD. These appointments are supposed to be scheduled between November 3 – 26, a period of only 16 business days, or nearly 6,200 per day if 100,000 recipients were to be scheduled.

54.    The NYC Department of Social Services (DSS), the City agency that oversees HRA, attests to the numerous obstacles posed to an orderly rollout of ABAWD time limits and work rules by the unworkable timeframe unlawfully imposed by USDA.  DSS must immediately mail out 100,000 letters translated into 15 languages, reconfigure four different computer systems, screen 100,000 clients for possible exemptions on top of over 50,000 already scheduled November appointments, and mandate that six newly-retained contractors schedule 6,200 work appointments per day in November.

55.    ABAWDs who do not receive HRA's notices, or who are unable to reach HRA on the phone well before December 1, will be unable to obtain an exemption in time to prevent the assessment of a countable month for December 2025.

56.    ABAWDs who receive notice of PACE appointments but have a conflict on the scheduled date due to medical appointments, family obligations or some other reason, will be unable to enroll in a work activity before December 1 because all or most of the November appointments will be filled by people who were able to make their first scheduled appointment.

57.    ABAWDs are unlikely to find employment in the private market, particularly on such short notice, given that New York City's unemployment rate far exceeds the average for the U.S. and even for New York State. See, par. 37, *supra.* Bronx County's 7.2 percent unemployment rate is double the national average.

58.    Affected recipients who begin accruing countable months in December can lose their SNAP benefits as early as March 2026.

59.    For those who manage to come into compliance with ABAWD work requirements after exhausting some or all of their three-month time limit the countable months

already accrued will limit their entitlement to benefits in future months where they cannot comply.

**PLAINTIFF FACTS**

**Urban Justice Center - Safety Net Project**

60.    Plaintiff Urban Justice Center-Safety Net Project (UJC-SNP), an independent project of the Urban Justice Center, is a nonprofit 501(c)(3) organization incorporated in the State of New York. UJC-SNP provides free legal services to low- and no-income households at legal clinics located at food pantries, soup kitchens, and community health centers throughout New York City. They advise, assist, and represent New York City's most vulnerable members who have questions about, or issues with, public benefits programs, including Public Assistance, SNAP, and Medicaid, as well as provide a range of housing and homelessness legal services. SNP additionally conducts policy work in coordination and partnership with the Safety Net Activists, a volunteer group of community members with personal experience with poverty, homelessness, and the public benefits system. In the past decade, SNP worked on over 5,600 cases where they assisted individuals with their Public Assistance and SNAP cases.

61.    Even before the termination of the waiver, UJC-SNP is experiencing overwhelming numbers of past and current clients calling them seeking guidance about the effect of the termination on their SNAP benefits. Strom Decl. at 9.

62.    Should the early termination of the waiver be permitted to go forward, UJC-SNP anticipates even more calls, both from their clients and from visitors to the clinics they staff at various community-based organizations. Strom Decl. at 16. The organizational Plaintiff will have to divert resources to meet the need of panicked SNAP recipients and, ultimately, will be forced to turn needy clients away. Strom Decl. at 10. They will also have to divert resources to

16

encourage government actors like HRA to improve the deployment of the new systems and fix erroneous denials. This will necessitate pulling back from other critical areas in which they organize to respond to this emergency. Strom Decl. at 11-15, 17.

**Laeticia Miguel**

63.     Plaintiff Laeticia Miguel resides with her husband in Queens, New York.

64.     Their household currently receives SNAP benefits of $546 per month, as well as Cash Assistance, Medicaid, and a CityFHEPS housing subsidy. They have no income aside from public benefits.

65.     Ms. Miguel is not currently working because she is taking care of her husband, who has multiple chronic medical problems.

66.     Ms. Miguel's husband has appointments three times each week to undergo life-saving treatment for his medical conditions. These treatments last several hours. Depending on traffic, it takes between forty minutes and an hour and a half each way to get to and from these appointments with the medical transportation service they use, so sometimes they are out of the house for nearly seven hours at a time on treatment days. Ms. Miguel's husband frequently has other medical appointments as well to monitor his conditions.

67.     Ms. Miguel's husband depends on her to coordinate his medical care. He does not remember to take his medication or go to medical appointments unless she reminds him. He will not leave the house without her and cannot travel independently.

68.     Ms. Miguel's husband's primary language is Lingala, so he also relies on her to interpret and advocate for him at medical appointments.

69.     Ms. Miguel's husband also depends on her for many activities of daily living, including cooking, bathing, and monitoring his blood pressure. Ms. Miguel tries not to leave him at home alone for more than thirty minutes at a time because he often stumbles and trips.

70.     Ms. Miguel last worked in 2022 as a supervisor at a child welfare agency. When her husband got sick, she requested permission to leave early some days to take him to medical appointments and was fired as a result.

71.     Ms. Miguel has been unable to locate employment that would accommodate her need to accompany her husband to medical appointments.

72.     Ms. Miguel also has medical problems of her own and is waiting to receive two surgical operations. However, her application for Supplemental Security Income ("SSI") disability benefits was denied.

73.     The New York City Human Resources Administration ("HRA") has found Ms. Miguel exempt from Cash Assistance work requirements but has nonetheless classified her as ABAWD.[1]

74.     Prior to October 2025, Ms. Miguel received SNAP benefits of only $292 per month, which increased to $546 when her husband was added to the SNAP case. It was not possible for Ms. Miguel to feed both herself and her husband for an entire month on this one-person SNAP budget of $292.

75.     Prior to October, Ms. Miguel would use up the entire $292 benefit restocking her food supplies at the beginning of the month but then had to resort to food pantries to get through

---

[1] Over the weekend of October 26-27, Ms. Miguel received a letter informing her that she must start complying with ABAWD work rules while her AccessHRA mobile app simultaneously informed her that she is now non-ABAWD. Ms. Miguel must now attempt to negotiate HRA's overwhelmed phone system to ascertain what her status really is and what rules she must comply with. Potentially thousands of other SNAP recipients are facing the same dilemma.

the month. She had to go to as many as five pantries during that time to find all the items her household needed. Her husband's diet is very restricted due to his medical conditions, so food pantries do not always have food that he can eat.

76.     Ms. Miguel's cash assistance benefit is only $131.98 twice per month, and she uses that money to cover all their other expenses, including electric, phone, laundry, over-the-counter medications, toiletries, and cleaning products.

77.     Ms. Miguel hoped to reduce her reliance on food pantries based on her husband's addition to her SNAP case.

78.     HRA's Access HRA mobile app shows that Ms. Miguel is classified as an Able-Bodied Adult Without Dependents ("ABAWD"), although she does not remember ever receiving any papers from HRA explaining ABAWD rules or procedures.

79.     Ms. Miguel is worried that she will lose her SNAP benefits if she is required to meet federal work requirements, because in the past she has not been able to find a job that accommodates her husband's care needs.

80.     She is also worried that she will not be able to get in touch with HRA to request an exemption from ABAWD rules. In the past, she has had difficulty reaching HRA on the phone due to very long hold times. Going in person to an HRA center is also difficult for her because she cannot leave her husband alone for very long.

81.     Ms. Miguel believes that if she had more time before the ABAWD rules go into effect, she would have more opportunities to try to reach HRA to request an extension or referral to a work activity with a schedule that would allow her to care for her husband.

82.     If she cannot find a job or obtain an ABAWD exemption, Ms. Miguel will begin accruing countable months toward her three-month limit beginning in December and may lose

eligibility for SNAP as soon as March 1, 2026. She and her husband will have great difficulty surviving on a one-person SNAP budget.

## CLASS ALLEGATIONS

83.    Plaintiffs bring this action on behalf of a class defined as:

> all New York City SNAP recipients who are classified as ABAWD pursuant to USDA regulations who will become subject to SNAP work requirements effective November 2, 2025, as a result of USDA's October 3 memorandum.

84.    This class is so numerous that joinder of all members is impracticable. There are over 100,000 SNAP recipients currently classified as ABAWD by the NYC Human Resources Administration

85.    The core questions of fact and law in this case are common to the class. These include: (a) whether defendant USDA's termination of New York's waiver was promulgated in excess of its lawful authority; (b) whether USDA's action was taken without consideration of important aspects of the problem its action was intended to address and failed to provide a reasoned explanation of its actions.

86.    The individual plaintiff's claims are typical of the claims of the class in that the named plaintiff class representative is currently classified as ABAWD and faces the accrual of countable months toward the statutory three-month limit if she cannot immediately comply with ABAWD work requirements by December 1, 2025.

87.    Declaratory and injunctive relief are appropriate with respect to the class as a whole because Defendant has acted on grounds applicable to the class.

88.    The named plaintiff and the proposed class are represented by The Legal Aid Society, whose attorneys are experienced in class action litigation and will adequately represent the class.

89.     A class action is superior to other available methods for a fair and efficient adjudication of this matter in that the prosecution of separate actions by individual class members would unduly burden the Court and create the possibility of conflicting decisions.

## CAUSES OF ACTION

### FIRST CLAIM

### (Violation of the Administrative Procedure Act § 706(2) – Contrary to Law)

90.     Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

91.     The APA, 5 U.S.C. § 706(2), prohibits federal agency action that is, among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; "contrary to constitutional right"; or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

92.     USDA is an "agency" under the APA. 5 U.S.C. § 551(A).

93.     By prematurely revoking New York's ABAWD Waiver prior to its lawful expiration on February 28, 2026, USDA acted without any authority under the SNAP Act, as amended by the OBBB of 2026, its own regulations, or the terms of the waiver itself.

94.     Defendant thus acted arbitrarily and capriciously, and otherwise not in accordance with law, in violation of the APA.

95.     Defendant's actions have caused and will continue to cause ongoing harm to plaintiffs and the general public.

## SECOND CLAIM

**(Violation of the Administrative Procedure Act – Failure to Consider Important Aspects of the Problem or Provide a Reasoned Explanation)**

96.     Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

97.     Under the APA, an agency action is arbitrary and capricious where the agency entirely failed to consider an important aspect of the problem or to provide a reasoned explanation for its actions.

98.     USDA is an "agency" under the APA. 5 U.S.C. § 551(A).

99.     In prematurely revoking New York's ABAWD waiver, Defendants failed to consider the effects of USDA's abrupt action on New York's ability to revise its policies and procedures to reinstitute screening and referral of ABAWD SNAP recipients – in particular, to provide sufficient notice to recipients regarding SNAP work requirements and provide work activities and referrals to enable ABAWD recipients to comply with those requirements.

100.     In prematurely revoking New York's ABAWD waiver, Defendants also failed to consider the effects on ABAWD SNAP recipients, who will be expected to find employment or alternate work activities within at best a 30-day period, or else beginning accruing "countable months" toward the three-month SNAP time limit for the current three-year counting period.

101.     USDA further failed to provide a reasoned explanation for its precipitate action, setting forth no reason why terminating the waiver three months early would promote any of the goals of the SNAP program or H.R.1, and no explanation of how New York State could be expected to immediately implement new ABAWD procedures without causing harm to indigent SNAP recipients classified as ABAWDs.

102.     USDA therefore acted in violation of the Administrative Procedure Act.

103.    Defendant's actions have caused and will continue to cause ongoing harm to plaintiffs and the general public.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

104.    Certify a class consisting of all SNAP recipients in New York City who have been classified as ABAWD or will be classified as ABAWD on or before February 28, 2026;

105.    Issue a declaratory judgment stating that Defendant violated the APA by acting contrary to law, failing to consider important aspects of the problem, and failing to provide a reasoned explanation for its actions;

106.    Preliminarily and permanently enjoin Defendants from prematurely terminating New York's ABAWD waiver pending the hearing and determination of this action;

107.    Award Plaintiffs attorneys' fees;

108.    Grant such additional relief as the Court considers just.


Dated:        New York, New York
              October 27, 2025


                          THE LEGAL AID SOCIETY
                          *Pavita Krishnaswamy*
                          Judith Goldiner
                          Edward Josephson
                          Pavita Krishnaswamy
                          Laboni Rahman
                          Emily Lundgren
                          Susannah Howe
                          Civil Law Reform Unit
                          49 Thomas Street, 5th Floor
                          New York, New York 10013
                          (212) 298-5219
                          e-mail: pkrishnaswamy@legal-aid.org