UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

URBAN JUSTICE CENTER-SAFETY NET
PROJECT, and LAETICIA MIGUEL, individually
and on behalf of all persons similarly situated,

                              Plaintiffs,

        vs.

BROOKE ROLLINS, in her official capacity as
Secretary of the U.S. Department
of Agriculture (USDA),

                             Defendants.

**Civ.**

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A
TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION AND
FOR CLASS CERTIFICATION**

THE LEGAL AID SOCIETY

Judith Goldiner
Edward Josephson
Pavita Krishnaswamy
Laboni Rahman
Emily Lundgren
Susannah Howe
Civil Law Reform Unit
49 Thomas Street, 5th Floor
New York, New York 10013
(212) 298-5219
pkrishnaswamy@legal-aid.org

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

<u>PRELIMINARY STATEMENT</u>                                                          1

<u>STATEMENT OF FACTS</u>                                                            2

<u>ARGUMENT</u>                                                                      9

I.    <u>THE COURT SHOULD GRANT A TEMPORARY RESTRAINING
      ORDER AND PRELIMINARY INJUNCTION STAYING THE
      TERMINATION OF NEW YORK'S ABAWD WAIVER.</u>                              8

      A. **Legal Standard**                                                         8

      B. **Defendant's Premature and Unlawful Termination of New York's
         ABAWD Waiver Irreparably Harms Plaintiffs.**                              9

         1. **Irreparable Harm to Individual Plaintiffs**                          10

         2. **Irreparable Harm to Organizational Plaintiffs**                      13

      C. **Plaintiffs Are Likely to Succeed on the Merits or, at a Minimum,
         Raise Serious Questions Going to the Merits.**                            14

         1. **Plaintiffs are Likely to Prevail on their Claim that Defendant
            has Acted in Excess of Its Legal Authority in Violation
            of APA 706(2).**                                                       15

         2. **Plaintiffs are Likely to Succeed on their Claim that Defendants
            Failed to Consider Important Aspects of the Problem or Provide a
            Reasoned Explanation for their Actions, in Violation of the APA.**     17

      D. **The Balance of Hardships Tips Toward Plaintiffs.**                      20

II.   <u>THE COURT SHOULD CERTIFY THE PROPOSED PLAINTIFF CLASS.</u>         21

      A. **The Proposed Class Satisfies Rule 23(a) (1)–(4)**                       21

         1. **The Proposed Class Is Sufficiently Numerous That Joinder
            of All Members Is Impracticable**                                      21

         2. **There Are Questions of Law or Fact Common to the Class**            22

         3. **The Named Plaintiffs' Claims are Typical of the Class**             23

**4. The Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Class** ............................................. **24**

**B. The Plaintiff Class Should be Certified Under Rule 23(b)(2)** .......... **25**

**<u>CONCLUSION</u>** ................................................................. **27**

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Koenigsmann*, No. 19-CV-8173, 2023 WL 2731733 (S.D.N.Y. 2023), *aff'd sub nom. Daniels v. Moores*, No. 24-30-PR, 2025 WL 883035 (2d Cir. Mar. 21, 2025) .............. 26

*Am. Fed'n of Gov't Emps., AFL-CIO v. U.S. Off. of Pers. Mgmt.*, 786 F. Supp. 3d 647 (S.D.N.Y. 2025) ..................................................................................................................... 9

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997). ........................................................... 26

*Bionpharma Inc. v. CoreRx, Inc.*, 582 F. Supp. 3d 167 (S.D.N.Y. 2022) ....................................... 9

*Black v. Cakor Rest., Inc.*, No. 22-CV-1447 (VEC), 2022 WL 17689840 at *5 (S.D.N.Y. Dec. 15, 2022) .................................................................................................................................. 9

*Brown v Giuliani,* 158 F.R.D. 251 (E.D.N.Y. 1994) ................................................................... 10

*Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229 (2d Cir. 2007) ....................................................... 22

*Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104 (2d Cir. 2017) ................................................................................................................................. 13

*Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30 (2d Cir. 2010) ............................................................................................................................... 9

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ...................................... 21

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) ...................................................... 24

*District of Columbia v United States Dept. of Agriculture*, 444 F.Supp. 3d 1 (D.D.C. 2020) 11, 14, 17

*F.C.C. v. Fox Television Stations*, Inc., 556 U.S. 502 (2008) ...................................................... 17

*F.C.C. v. NextWave Pers. Commc'ns, Inc.*, 537 U.S. 293 (2003) .............................................. 15

*Fed. Defenders of New York, Inc. v. Fed. Bureau of Prisons*, No. 19-1778, 2020 WL 1320886 (2d Cir. 2020) ..................................................................................................................... 15

*General Telephone Co. of Sw. v. Falcon*, 457 U.S. 147 (1982). ................................................ 23

*Hatten-Gonzales v. Earnest*, No. CV 88-0385 KG/CG, 2016 WL 10588075 at *8 (D.N.M. Mar. 18, 2016) ............................................................................................................................... 12

*Holt v. Continental Group, Inc.*, 703 F.2d 87 (2d Cir. 1983) ....................................................... 9

*In re Flag Telecom Holdings, Ltd. Securities Litigation*, 574 F.3d 29 (2d Cir. 2009) ........... 23, 25

*Islam v. Cuomo*, 475 F. Supp. 3d 144 (E.D.N.Y. 2020) ............................................................... 14

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70 (2d Cir.1979) ................................. 9

*Jacob v. Duane Reade, Inc.*, 602 F. App'x. 3 (2d Cir. 2015) ..................................................... 22

*Johnson v. Nextel Communs., Inc.*, 780 F.3d 128 (2d Cir. 2015) ............................................ 22

*League of Women Voters of U.S. v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) ................................... 13

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ............................ 15

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ........................................................... 16

*M.K.B. v. Eggelston*, 445 F. Supp. 2d 400 (S.D.N.Y. 2006) ...................................................... 10

*Make the Road New York v. Cuccinelli*, 419 F. Supp. 3d 647 (S.D.N.Y. 2019), *aff'd as modified sub nom. New York v. United States Dep't of Homeland Sec.*, 969 F.3d 42 (2d Cir. 2020) 14, 17

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209 (2012) .... 15

*McIntire v. ODS Capital LLC (In re Patriot Nat'l, Inc. Sec. Litig.)*, 828 F. App'x 760 (2d Cir. 2020) ..................................................................................................................................... 24

*Metro. Transportation Auth. v. Duffy*, 784 F. Supp. 3d 624 (S.D.N.Y. 2025) ........................... 16

*Michigan v. EPA*, 135 S. Ct. 2699 (2015) .................................................................................... 17

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) . 17

*Mullen v. Treasure Chest Casino, LLC.*, 186 F.3d 620 (5th Cir. 1999) ...................................... 22

*Mullins v. City of New York*, 626 F.3d 47 (2d Cir. 2010). ........................................................... 9

*Nat. Res. Def. Council v. Abraham*, 355 F.3d 179 (2d Cir. 2004) .............................................. 15

*Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95 (2d Cir. 2018) ...... 15

*New York v. U.S. Dep't of Health and Human Servs.*, 414 F. Supp. 3d 475 (S.D.N.Y. 2019)..... 17

*New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42 (2d Cir. 2020)....................................... 20

*New York v. United States Dep't of Homeland Sec.,* 969 F.3d 42 (2d Cir. 2020) ....................... 13

*New York v. United States Dep't of Health & Hum. Servs.*, 414 F. Supp. 3d 475 (S.D.N.Y. 2019),
................................................................................................................................................ 16, 19

*Pennsylvania Pub. Sch. Employees' Ret. System v. Morgan Stanley & Co., Inc.*, 772 F.3d 111 (2d
Cir. 2014) ................................................................................................................................... 21

*Raymond v. Rowland,* 220 F.R.D. 173 (D. Conn. 2004) ............................................................. 22

*Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904 (2d Cir. 1990)............................................ 9

*Reynolds v. Giuliani*, 35 F. Supp. 2d 331 (S.D.N.Y. 1999)......................................................... 10

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993).................................................................. 22, 23

*Saget v. Trump* 375 F. Supp. 3d 280 (E.D.N.Y. 2019)......................................................... 15, 20

*Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328 (2d Cir. 1995)...................................................... 9

*Tucker Anthony Realty Corp v. Schlesinger*, 888 F.2d 969 (2d Cir. 1989) ................................... 9

*Valle del Sol, Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013) ..................................................... 13

**Statutes**

5 U.S.C. § 702........................................................................................................................... 14

5 USC § 706........................................................................................................... 2, 15, 16, 17

7 CFR § 273.24...................................................................................................... 2, 3, 16

Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA),........... 3

## PRELIMINARY STATEMENT

Plaintiffs are recipients of the Supplemental Nutrition Assistance Program (SNAP) who are classified as able-bodied adults without dependents (ABAWD), and organizations that support and advocate on behalf of low-income New Yorkers, including SNAP recipients. See Declaration of Laeticia Miguel (Miguel Decl.) at 4, Declaration of Helen Strom (Strom Decl.) at 4. Under current law, pursuant to a waiver duly issued to New York State based upon a showing that there were "insufficient jobs" in the state, Plaintiffs are protected from the loss of their subsistence benefits if they are unable to meet the SNAP ABAWD work requirements. The current waiver was approved to be effective through February 28, 2026. However, on October 3, 2025, the USDA issued a memo purporting to terminate the waiver effective November 2, 2025.

This sudden, premature, and unlawful action will harm plaintiffs and the proposed class. The NYC Department of Social Services (DSS) attests that the abbreviated time frame presents innumerable obstacles to an orderly rollout of ABAWD time limits and work rules. DSS must immediately mail out 100,000 letters, translated into 15 languages, reconfigure four different computer systems, screen 100,000 clients for possible exemptions on top of over 50,000 already scheduled November appointments, and mandate that six newly-retained contractors schedule 6,200 work appointments per day in November. See, Declaration of Molly Wasow Park, dated October 27, 2025.

The chaos and confusion ensuing from this impossible timeframe ensures that mistakes will be made, and potentially thousands of SNAP recipients wrongly penalized. Thus, if the premature termination of the waiver is allowed to stand, all SNAP recipients currently classified as ABAWD will risk future loss of subsistence level benefits. Miguel Decl. at 28. The organizational plaintiff will also suffer expenditure and diversion of resources that will diminish

1

its ability to achieve its mission. Strom Decl. at 10. Plaintiffs have brought this action on behalf of themselves and a class of over 100,000 SNAP recipients in New York City who are classified as ABAWD to challenge USDA's unlawful termination of the ABAWD waiver.

USDA claims authority for its unlawful action in the One Big Beautiful Bill Act (also known as H.R.1) that was signed into law on July 4, 2025. However, the law gives no such authority to terminate waivers duly issued and already in effect, nor is such authority to be found in USDA regulations or in the terms of New York's waiver itself. USDA's action thus violates the federal Administrative Procedures Act, 5 USC § 706 (2)(A), because the purported termination was in excess of USDA's lawful authority, and because USDA failed to consider important elements of the matter when it purported to terminate waivers already in effect and relied upon by millions of SNAP recipients across the nation, including at least 100,000 New York SNAP recipients currently classified as ABAWD. This motion for a preliminary injunction seeks to preserve the status quo and prevent irreparable harm pending judicial review of the underlying action.

## STATEMENT OF FACTS

Federal law requires SNAP recipients who are classified as ABAWD to be engaged in 80 hours per month of qualified work or work-related activities. 7 CFR § 273.24. An ABAWD who fails to meet the work requirement will accrue "countable months" of noncompliance. Once an ABAWD reaches three countable months, they will lose their SNAP benefits for every month thereafter that they fail to meet the work requirement. This loss of eligibility for SNAP benefits continues for the duration of a fixed three-year period, after which time the clock resets and ABAWDs are given a clean slate for the next three-year period. A single grace period of an

additional three months is available once per three-year period. 7 CFR § 273.24(e) The threshold of three countable months is known as the ABAWD time limit.

States may request a waiver of the ABAWD time limit (ABAWD waiver) upon a showing that the unemployment rate is over 10% or, prior to the passage of H.R.1 of 2025, that there are insufficient jobs in the local economy. 7 CFR § 273.24(f)(1). The "insufficient jobs" criteria allows states to seek waivers in regions where, despite unemployment under 10%, the job market fails to offer sufficient employment opportunities for ABAWDs, a population whose employability is markedly lower than that of the general population. USDA has issued ABAWD waivers to New York State under the insufficient jobs provision every year since at least 2020 due to the COVID-19 national emergency. Statewide or partial state waivers were in effect prior to that time as well. In fact, since the initial promulgation of the ABAWD time limit in the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA), the time limit has almost never been in effect in New York City either due to local or statewide waivers, or a national suspension of all SNAP work requirements in response to the Great Recession.

The current waiver was duly issued on October 2, 2024, for 61 New York counties, including the five boroughs of New York City, based on a showing that New York's unemployment rate was 20 percent above the national average. New York City's unemployment rate was far higher than that of the state as a whole – Bronx County's unemployment rate was double the national average. See Complaint at 36.

The waiver issued by USDA runs through February 28, 2026. Although H.R.1 eliminated the provision under which the ABAWD waiver was issued, it did not terminate or purport to terminate waivers already in effect. Further, nothing in the waiver itself and no provision of

federal law provides a basis for early termination of duly approved waivers. Neither has USDA provided any reasoned basis to justify their unsanctioned action.

Under federal law, the administration of SNAP, including the implementation of the work requirements and the ABAWD requirements, is delegated to the states and their local social services districts. The five boroughs of New York City comprise a single social services district and the administrator is the New York City Human Resources Administration (HRA). According to the 2025 Mayor's Management Report, there are nearly 1.8 million people in New York City who rely on SNAP benefits to feed themselves and their families. According to HRA, over 100,000 individual SNAP recipients are currently classified as ABAWDs.[1] As noted by HRA, this figure does not include household members of impacted SNAP recipients who will see their overall household food benefits reduced.

Under terms of the existing waiver, ABAWDs are not at risk of losing benefits pursuant to ABAWD time limits until March 1, 2026. Thereafter, once a person accrues three countable months, the SNAP recipient will lose subsistence level nutrition benefits for every month thereafter in which they are unable to comply with the ABAWD work requirements. The USDA's unlawful termination of New York's duly issued ABAWD waiver increases the loss of benefits that ABAWDs will suffer by a full three months. Instead of the countable months accruing from March 1, 2026, ABAWDs will be subject to countable months starting December 1, 2025.[2] These three months represent accelerated and additional loss of SNAP benefits and constitute irreparable harm to Plaintiffs.

---

[1] Available at https://www.nyc.gov/assets/hra/downloads/pdf/benefits/Public-Benefits-Work-Requirements-Information-Session-10-21-25.pdf? (last visited October 25, 2025).

[2] The memo terminates the current waiver effective November 2, 2025, but SNAP rules regarding months that can be counted toward the time limit provide that only full months can be counted. This renders November 2-30 ineligible to be counted and the three-month time limit begins on December 1, 2025.

The ABAWD time limit has been waived in New York City continuously since the COVID-19 pandemic. During periods of waiver, HRA must continue to advise ABAWDs of the work requirement at every application and recertification. However, until October 2, 2025, ABAWDs were also informed that the time limit was waived through February 28, 2026.

HRA announced on October 21 that it planned to issue notices to thousands of SNAP recipients classified as ABAWD, inviting them to call HRA if they believed they should be exempt from work requirements. HRA plans to send additional thousands of letters scheduling appointments with six contracting "PACE" agencies who are entrusted with finding qualifying work activities for SNAP recipients classified as ABAWD. These appointments are supposed to be scheduled between November 3 – 26, a period of only 16 business days, or over 6,200 per day if 100,000 recipients are to be scheduled.

The NYC Department of Social Services (DSS), the City agency that oversees HRA, attests to the numerous obstacles posed to an orderly rollout of ABAWD time limits and work rules by the unworkable timeframe unlawfully imposed by USDA.  DSS must immediately mail out 100,000 letters, translated into 15 languages, reconfigure four different computer systems, screen 100,000 clients for possible exemptions on top of over 50,000 already scheduled November appointments, and mandate that six newly-retained contractors schedule 6,200 work appointments per day in November.  See, Declaration of Molly Wasow Park, dated October 27, 2025.

As a result, SNAP recipients classified as ABAWD who might qualify for an exemption but do not receive HRA's notices or are unable to get through HRA's already overburdened phone lines well before December 1, will be unable to obtain an exemption in time to prevent the assessment of a countable month for December 2025. ABAWDs who receive notice of PACE

appointments but have a conflict on the scheduled date due to medical appointments, family obligations or some other reason, will be unable to enroll in a work activity before December 1. See, Wasow Decl., at 14. SNAP recipients classified as ABAWD are unlikely to find employment in the private market, particularly on such short notice, given that New York City's unemployment rate far exceeds the average for the U.S. and even for New York State. See, Complaint, at 37. Bronx County's 7.2 percent unemployment rate is double the national average. ABAWDs working in the informal and gig economy might be able to prove compliance with the work requirement, if given proper notice and reasonable time to be engaged by HRA.

If the USDA is not enjoined from prematurely and unlawfully terminating the ABAWD waiver, individual Plaintiffs and members of the Plaintiff class will suffer irreparable harm of three months of accelerated and additional loss of subsistence level SNAP benefits. Class members will also accrue countable months that will place them at increased risk of losing benefits in the future. Given the size and scale of the need for public benefits in New York City, organizational plaintiffs will be forced to expend resources and divert their attention to provide guidance and counsel to ABAWDs. Individual plaintiffs, organizational plaintiffs, and the proposed class will suffer irreparable harm due to the USDA's unlawful action unless the Court acts to enjoin the USDA from terminating the duly issued ABAWD waiver pending judicial review.

## **Plaintiffs**

*Urban Justice Center - Safety Net Project UJC-SNP*

Safety Net Project, an independent project of the Urban Justice Center, is a nonprofit 501(c)(3) organization incorporated in the State of New York. SNP provides free legal services to low and no-income households at legal clinics located at food pantries, soup kitchens, and

community health centers throughout New York City. It advises, assists, and represents New York City's most vulnerable members who have questions about, or issues with, public benefits programs, including Public Assistance, SNAP, and Medicaid, and provides a range of housing and homelessness legal services. UJC-SNP additionally conducts policy work in coordination and partnership with the Safety Net Activists, a volunteer group of community members with personal experience with poverty, homelessness, and the public benefits system. In the past decade, UJC-SNP worked on over 5,600 cases where they assisted individuals with their Public Assistance and SNAP cases. See Strom Decl. 1, 4-5.

Should the early termination take effect, in addition to being called on to provide guidance and advocacy to its own members and clients, UJC-SNP will be called upon to provide support to its partners in the community, beyond the capacity of what they normally accept at their regular community clinics. And UJC-SNP will be called on to do additional Know Your Rights events and trainings, likely beyond their current capacity. UJC-SNP will also need to increase their advocacy with government actors to try to push them to improve their implementation of the new work requirements. UJC-SNP's organizing component, which encompasses areas beyond SNAP, will be diverted to this emergency situation, thus reducing the organization's available resources for other critical organizing priorities, such as increasing statewide cash assistance, expanding access to housing subsidies, and addressing harmful homelessness policies. See Strom Decl. at 16-17.

*Laeticia Miguel*

Plaintiff Laeticia Miguel is a 35-year-old SNAP recipient classified as ABAWD.[3] She lives in Queens, New York with her husband who suffers from various medical conditions and

---

[3] Over the weekend of October 26-27, Ms. Miguel received a letter informing her that she must start complying with ABAWD work rules while her AccessHRA mobile app simultaneously informed her that she is now non-

requires her daily support.  Ms. Miguel previously worked as a supervisor at a child welfare

agency, but she was fired when she told her employer that she would have to leave early on some

days to care for her husband. Together, Ms. Miguel and her husband receive $546 per month in

SNAP benefits. HRA has found Ms. Miguel to be exempt from Cash Assistance work

requirements because she is needed at home to care for her husband, but HRA has not assessed

her to be exempt from the ABAWD work requirement. Unfortunately, Ms. Miguel has been

unable to satisfy the ABAWD work requirements thus stands to lose half of her household's

SNAP benefits once the waiver expires and the time limit runs out. Under the status quo ante, the

loss of her subsistence level benefits would hit on June 1, 2026. However, unless this Court acts

to enjoin the USDA's unlawful action to terminate the waiver effective November 2, 2025, Ms.

Miguel and her husband will lose half of their monthly food benefits as soon as March 1, 2026.

See Miguel Decl. generally.

## **ARGUMENT**

### I.    **THE COURT SHOULD GRANT A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION STAYING THE TERMINATION OF NEW YORK'S ABAWD WAIVER.**

#### A.  **Legal Standard**

Plaintiffs meet the long-established Second Circuit standard for granting preliminary

relief. To secure a preliminary injunction, the moving party must show: "(a) irreparable harm and

(b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the

merits to make them a fair ground for litigation and a balance of hardships tipping decidedly

toward the party requesting the preliminary relief." *Citigroup Glob. Markets, Inc. v. VCG Special*

---

ABAWD. Ms. Miguel must now attempt to negotiate HRA's overwhelmed phone system to ascertain what her
status really is and what rules she must comply with. Potentially thousands of other SNAP recipients are facing the
same dilemma.

*Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979). Plaintiffs satisfy the standard required for a preliminary injunction, and their motion should be granted.

### B. Defendant's Premature and Unlawful Termination of New York's ABAWD Waiver Irreparably Harms Plaintiffs.

USDA's premature termination of the ABAWD waiver will cause irreparable harm to Plaintiffs and the proposed Class. The USDA's unlawful action will cause Plaintiffs to suffer the loss of three additional months of SNAP benefits and to suffer that loss a full three months earlier. This loss represents irreparable harm, "the single most important prerequisite for the issuance of a preliminary injunction." *Bionpharma Inc. v. CoreRx, Inc.*, 582 F. Supp. 3d 167, 175 (S.D.N.Y. 2022) (*quoting Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990)). To establish irreparable harm, Plaintiffs must demonstrate "an injury that is neither remote nor speculative, but actual and imminent," *Tucker Anthony Realty Corp v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989) (citations and internal quotation marks omitted), and that "cannot be remedied by an award of monetary damages." *Shapiro v. Cadman Towers*, *Inc.*, 51 F.3d 328, 332 (2d Cir. 1995) (citing *Tucker Anthony Realty Corp.*, 888 F.2d at 975). Threat of future loss is sufficient to establish irreparable harm if that threat is the likely outcome of the current facts of the case. Plaintiffs need only show that there is a "threat of irreparable harm, not that irreparable harm already [has] occurred," *Mullins v. City of New York*, 626 F.3d 47, 55 (2d Cir. 2010). Increased "risk" of negative consequences is sufficient to meet the irreparable harm requirement for a preliminary injunction. *Id.,* at 55; *Holt v. Continental Group, Inc.*, 703 F.2d 87, 91 (2d Cir. 1983); *Am. Fed'n of Gov't Emps., AFL-CIO v. U.S. Off. of Pers. Mgmt.*, 786 F. Supp. 3d 647, 693 (S.D.N.Y. 2025); *Black v. Cakor Rest., Inc.*, No. 22-CV-1447 (VEC), 2022 WL 17689840 at *5 (S.D.N.Y. Dec. 15, 2022).

1.  **Irreparable Harm to Individual Plaintiff and the Proposed Class**

It is well established that the loss of public benefits constitutes irreparable harm and that "loss of even a small portion of welfare benefits can constitute irreparable injury warranting issuance of a preliminary injunction." *Brown v Giuliani,* 158 F.R.D. 251, 264 (E.D.N.Y. 1994). In *Reynolds v. Giuliani*, 35 F. Supp. 2d 331, 339 (S.D.N.Y. 1999), where the plaintiffs challenged unjustified denials and delays in providing food stamps, the court granted class certification and preliminary relief. *Id. See also, M.K.B. v. Eggelston*, 445 F. Supp. 2d 400, 437 (S.D.N.Y. 2006) ("Given the often perilous economic circumstances of the plaintiffs" the loss of public benefits including food stamps "unquestionably constitutes irreparable harm"); *Brown v. Giuliani,* 158 F.R.D. at 264–65 ("[P]laintiffs vividly portray the irreparable consequences to them and their families and infant children when welfare moneys are not forthcoming in a timely fashion: going without food and clothing, lack of medicine for sick family members . . . .").

In this case, Ms. Miguel faces the threat of irreparable harm of losing three additional months of subsistence level benefits due entirely to the USDA's early termination of the currently effective ABAWD waiver. If the USDA is not enjoined from cancelling the ABAWD waiver, she will accrue countable months starting December 1, 2025, and is threatened with the loss of SNAP benefits that she relies upon to feed herself and her family as early as March 1, 2026. Ms. Miguel attests that it would be impossible for she and her husband to feed themselves on a one-person SNAP budget if she were to exceed the ABAWD time limit and she would then have to juggle desperate visits to food banks with her husband's numerous medical appointments.

The declaration of Molly Wasow Park provides strong evidence to believe that thousands of members of the proposed class will face the same harm as Ms. Miguel.  In order to ensure that

eligible SNAP recipients are not mistakenly classified as ABAWD, and that ABAWD recipients receive their legally-mandated opportunity to receive work activity assignments, DSS must immediately mail out 100,000 letters, translated into 15 languages, reconfigure four different computer systems, screen 100,000 clients for possible exemptions on top of over 50,000 already scheduled November appointments, and mandate that six newly-retained contractors schedule 6,200 work appointments per day in November.  See, Declaration of Molly Wasow Park, dated October 27, 2025. Clearly, this impossible timeframe provides a recipe for administrative chaos and widespread error that will cause thousands of SNAP recipients to receive countable months of noncompliance starting in December.

The D.C. District Court offers persuasive analysis in assessing the irreparable harm of future loss of benefits. In *District of Columbia v United States Dept. of Agriculture*, 444 F.Supp. 3d 1 (D.D.C. 2020), the court analyzed the harm to SNAP recipients classified as ABAWDs who would lose a waiver due to a USDA regulatory change restricting the issuance of such waivers. USDA argued that harm to plaintiffs was speculative because plaintiffs would maybe find qualifying work or might qualify for medical exemptions. The court rejected this argument entirely. That plaintiffs had "struggled to find work in the past is sufficient to show that this difficulty is likely to occur again, triggering a loss of benefits after the District loses its waiver. Even taking into account the unquantifiable possibility that [plaintiffs] will qualify for medical exemptions, they have shown with enough certainty that they are likely to lose their SNAP benefits as a result of the Rule." *Id.*, at 45.

Likewise, the named Plaintiff and the proposed Class are SNAP recipients coded as ABAWD who have historically been unable to find qualifying work and work-related activity to meet the ABAWD work requirements. Under the principle that claims are assessed based upon

11

the facts at the time of filing, the Plaintiff will likely not find qualifying work and will lose

SNAP benefits when the ABAWD waiver expires and the ABAWD time limit runs out. Once the

time limit expires, ABAWDs who fail to meet the work requirement will be cut off from SNAP

benefits for the remaining duration of the three-year clock  set by the state. In New York, the

current clock runs through September 30, 2026, and will reset on October 1, 2026. In absence of

USDA's waiver termination, Plaintiffs would be subjected to the ABAWD time limit from

March 1, 2026, through September 30, 2026, and would risk losing benefits no sooner than June

1, 2026. Over the seven months between March 1 and September 30, plaintiffs would stand to

lose a total of four months of SNAP benefits. However, if the current ABAWD waiver is

permitted to terminate on November 2, 2025, then Plaintiffs will become subject to the time limit

starting December 1, 2025, through the end of the current three-year statewide clock. This

accelerated and expanded timeline would mean that for the 10-month period from December

2025 through September 2026, plaintiffs would be at risk of losing benefits for a total of seven

months, from March through September. Unless this Court enjoins the USDA's unlawful action,

Plaintiffs will suffer the irreparable harm of three additional months of lost SNAP benefits, and

the early termination will accelerate the onset of that harm by three months.

Individual plaintiffs will also be harmed because USDA's action subjects them to

assessment of "countable months" starting in December 2025, when otherwise the first

"countable month" would be March 2026. Each countable month constitutes a permanent legal

harm brings plaintiffs closer to the three-month threshold, placing them at greater risk of losing

benefits in the near future. For this reason, the District Court in *Hatten-Gonzales v. Earnest*, No.

CV 88-0385 KG/CG, 2016 WL 10588075 at *8 (D.N.M. Mar. 18, 2016), found that  "incurring

countable months, potentially leading to the ultimate termination of benefits" constituted irreparable harm justifying issuance of a preliminary injunction.

### 2. <u>Irreparable Harm to Organizational Plaintiff</u>

USDA's premature termination of New York's ABAWD waiver will also cause irreparable harm to the Plaintiff organization. Non-profit organizations are deemed to suffer irreparable harm when an administrative rule or action causes "ongoing harms to their organizational missions," including diversion of resources. *See, Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 111 (2d Cir. 2017); *New York v. United States Dep't of Homeland Sec.,* 969 F.3d 42, 86 (2d Cir. 2020); *Valle del Sol, Inc. v. Whiting*, 732 F.3d 1006, 1018–19, 1029 (9th Cir. 2013); *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 8–9 (D.C. Cir. 2016).

As set forth above, USDA's termination of the ABAWD waiver three months prior to its scheduled expiration will compel over 100,000 SNAP recipients to suddenly seek ways to comply with federal SNAP requirements that, for many of them, have been waived since the COVID pandemic. This multitude of people will all simultaneously attempt to obtain advice from HRA regarding SNAP requirements as well as referrals to activities that can fulfill them. Those unable to penetrate HRA's overwhelmed switchboard will seek advice and assistance from organizations like UJC-SNP - Safety Net Project, overwhelming their resources as well. UJC-SNP will therefore need to divert resources away from other priorities of the organizations to meet the sudden demand for ABAWD-related advice.

As the Second Circuit held in *Centro de la Comunidad Hispana*, 868 F.3d at 111 (2d Cir. 2017), "[W]here an organization diverts its resources away from its current activities, it has suffered an injury that has been repeatedly held to be independently sufficient to confer

organizational standing." Time spent assisting panicked SNAP recipients seeking exemptions

from the ABAWD work requirements or referrals to work activities will divert staff resources

from other vital organizational priorities such as UJC-SNP's organizing activities outside of

SNAP, which include increasing statewide cash assistance, expanding access to housing

subsidies, and fighting the criminalization of homelessness, thus causing irreparable harm to

UJC-SNP's organizational mission. *See, Islam v. Cuomo*, 475 F. Supp. 3d 144, 154 (E.D.N.Y.

2020) (resources diverted to assist members with unemployment claims); *Make the Road New

York v. Cuccinelli*, 419 F. Supp. 3d 647 (S.D.N.Y. 2019), *aff'd as modified sub nom. New York v.

United States Dep't of Homeland Sec.,* 969 F.3d 42 (2d Cir. 2020) (diverting resources "to

educate their clients, members, and the public about the [public charge] Rule").

In the very similar case of *District of Columbia v. U.S. Dep't of Agriculture*, the court

found that organizational plaintiff Bread for the City, which provided both food and legal

services to SNAP recipients, had established irreparable harm because it would be forced "to

divert resources to its food assistance program and to helping ABAWDs navigate the new time

limits and away from other social service programs and from legislative advocacy and

community organizing." *District of Columbia v. U.S. Dep't of Agriculture*, 444 F. Supp. 3d 1, 40-

41 (D.D.C. 2020). For the same reasons, Plaintiff UJC-SNP has established the threat of

irreparable harm herein.

### C. Plaintiffs Are Likely to Succeed on the Merits or, at Minimum, Raise Serious Questions Going to the Merits

The Administrative Procedure Act, 5 U.S.C. § 702, provides that "[a] person suffering

legal wrong because of agency action, or adversely affected or aggrieved by agency action

within the meaning of a relevant statute, is entitled to judicial review thereof." Under the APA, a

reviewing court must "hold unlawful and set aside agency action" that is arbitrary and capricious

14

or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. §§ 706(2)(A), (C).

The APA "functions as an 'omnibus judicial-review provision,' permitting 'suit[s] for [agency] violations of numerous statutes of varying character that do not themselves include causes of action for judicial review.'" *Fed. Defenders of New York, Inc. v. Fed. Bureau of Prisons*, No. 19-1778, 2020 WL 1320886 (2d Cir. 2020) (finding that plaintiffs have standing to sue under the APA and exhorting federal agencies to develop practices that protect legal rights during emergencies such as the COVID-19 outbreak) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126-29 (2014)). The APA renders agency action "presumptively reviewable." *Fed Defenders*, No. 19-1778, 2020 WL 1320886 (citing *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012)).

Under the APA, courts may set aside agency action that violates the law. *Saget v. Trump* 375 F. Supp. 3d 280, 346 (E.D.N.Y. 2019) ("The Administrative Procedure Act requires federal courts to set aside federal agency action that is 'not in accordance with law' which means, of course, any law, and not merely those laws that the agency itself is charged with administering"), citing 5 U.S.C. § 706(2)(A); *F.C.C. v. NextWave Pers. Commc'ns, Inc.*, 537 U.S. 293, 300 (2003).

### 1.  **Plaintiffs are Likely to Prevail on their Claim that Defendant has Acted in Excess of Its Legal Authority in Violation of APA 706(2).**

"It is well settled that an agency may only act within the authority granted to it by statute." *Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 108 (2d Cir. 2018). A federal administrative agency is a "creature of statute, having no constitutional or common law existence or authority, but only those authorities conferred upon it by Congress." *NRDC*, 894 F.3d at 108; *Nat. Res. Def. Council v. Abraham*, 355 F.3d 179, 202 (2d Cir. 2004)

(noting the "well-established principle" that "an agency literally has no power to act ... unless and until Congress confers power upon it.") [internal citations omitted]. The APA instructs courts to "hold unlawful and set aside agency action" that is "in excess of statutory ... authority." 5 U.S.C. § 706(2)(C). In reviewing an agency's statutory authority, or lack thereof, "the question ... is always whether the agency has gone beyond what Congress has permitted it to do." *NRDC*, 894 F.3d at 108. In determining whether an agency has acted within its statutory authority, "courts must exercise their independent judgment," and "may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024).

In *New York v. United States Dep't of Health & Hum. Servs.*, 414 F. Supp. 3d 475, 517 - 535 (S.D.N.Y. 2019), the court held that HHS had exceeded its authority both by enacting regulations contrary to statute, and by asserting authority to terminate recipients' Medicaid funding for violation of its "conscience provisions."  Similarly, in *Metro. Transportation Auth. v. Duffy*, 784 F. Supp. 3d 624, 668 - 674 (S.D.N.Y. 2025), the court recently held that the plaintiffs were likely to prevail on their claim that the Department of Transportation unlawfully acted to terminate a "VPPP" agreement related to congestion pricing without authorization in its own regulations or the terms of the agreement itself.

Here, no provision of the SNAP Act or H.R.1 of 2025 authorizes USDA to terminate duly authorized waivers prior to their date of expiration. Similarly, USDA regulations provide for waiver of work requirements based on local unemployment levels but make no provision for early termination of such waivers. 7 CFR § 273.24(f). The terms of New York's waiver, issued

by USDA on October 2, 2024, contains no provision allowing for early termination by USDA.[4]

USDA's action on October 3, 2025, terminating the waiver as of November 2, 2025, was wholly

without authority under federal statute, regulation or the terms of the waiver itself, and therefore

must be set aside pursuant to 5 U.S.C. § 706(2)(C).

> ### 2.   Plaintiffs are Likely to Succeed on their Claim that Defendants Failed to Consider Important Aspects of the Problem or Provide a Reasoned Explanation for their Actions, in Violation of the APA.

The APA requires an agency to engage in "reasoned decision-making" and to "articulate

a satisfactory explanation for its action." *Make the Road New York v. Cuccinelli*, 419 F. Supp. 3d

647, 661 (S.D.N.Y. 2019) (citing *Michigan v. EPA*, 135 S. Ct. 2699, 2706 (2015); *Motor Vehicle*

*Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). An agency

rule or procedure is arbitrary and capricious if the agency entirely failed to consider an important

aspect of the problem. *Make the Road*, 419 F. Supp. 3d at 662 (citing *State Farm* 463 U.S. at 43);

*New York v. U.S. Dep't of Health and Human Servs.*, 414 F. Supp. 3d 475, 554 (S.D.N.Y. 2019).

When an agency changes prior policy, the agency must "show that there are good reasons for the

new policy." *Make the Road*, 419 F. Supp. 3d at 662 (citing *F.C.C v. Fox Television Stations*,

Inc., 556 U.S. 502, 515 (2008)). *See also District of Columbia v. USDA* 496 F.Supp.3d 213

(2020) ("When agency is rescinding prior policy, its reasoned analysis must consider alternatives

that are within the ambit of existing policy, and failing to provide such explanation can render

agency action arbitrary and capricious").

USDA has violated the APA by failing to provide rational justification, or any reasoning,

for prematurely terminating the ABAWD waiver that it issued only one year previously. In its

---

[4] The absence of early termination language anywhere in federal law makes eminent sense, since abrupt terminations like the one at issue here inevitably cause administrative disruption and chaos, as well as confusion and hardship among the beneficiaries of the SNAP program.

October 3 directive, it stated, without further explanation, that "FNS will terminate any such ABAWD waivers 30 days after issuance of this memorandum." Illogically, however, after decreeing termination within 30 days, USDA required that "prior to termination, State agencies must prepare to enforce the time limit in areas which will no longer have ABAWD waivers. At a minimum, these activities include updating eligibility systems, notifying SNAP households of the time limit, and training eligibility workers."  USDA's directive further suggests that ABAWD recipients have no need for waivers because "able-bodied adults have ample opportunities to re-engage with their communities even in areas with relatively high unemployment through other activities that meet the requirement."  USDA therefore "strongly encourages State agencies to fully implement the work requirements and not seek waivers" in the future.

USDA has thus given no reasoned explanation for its premature termination of duly approved ABAWD waivers, other than to wrongly suggest the passage of H.R.1 imposes a mandate. USDA has not claimed that the economic conditions in response to which the waiver was granted have changed – in fact, the local economic data continue to support the assessment that there are insufficient employment opportunities for ABAWDs across New York State and in New York City.

USDA also did not set forth any reason why ABAWD work requirements need to be implemented in November 2025 rather than in March 2026. To the extent that USDA based its action on the belief that ABAWDs in high unemployment areas like New York City "have ample opportunities to re-engage with their communities" through work activities arranged by HRA, it provides no reasoned explanation why cutting short HRA's time to prepare those activities would not negatively impact recipients' ability to "re-engage."

Framed differently, to the extent that USDA's goal was to speed up the "re-engagement" of ABAWDs with their communities, USDA failed to consider the ability of HRA to arrange referrals to qualifying work activities over a suddenly abbreviated 30-day period rather than the four months that would have been allowed under the existing waiver. USDA also failed to consider that HRA would need the full four months to reinstitute work activities given that work requirements had been waived for New York City at least since the COVID-19 pandemic. Finally, USDA failed to consider the harm that would occur to SNAP recipients classified as ABAWD who, after living for years under USDA's waivers, would have difficulty on a mere 30-days' notice finding employment in areas with as much as double the national unemployment rate, or obtaining alternative work activities from an agency overwhelmed by the need to provide referrals for 100,000  clients on virtually a moments' notice. USDA appears to have given no consideration to the effects on these recipients should they accrue three countable months as a result of USDA's precipitate action and then lose the ability to feed themselves and their households.

In *New York v. United States Dep't of Health & Hum. Servs.,* 414 F. Supp. 3d 475, 555 (S.D.N.Y. 2019), the court found that HHS, in threatening to cut off Medicaid funding for violations of its "Conscience Rule", failed to consider *inter alia* "how the Rule would impact health care delivery in emergency situations ... failed to consider disruption in health care delivery, … [and] failed to consider Rule's conflict with medical ethics, including the duty of health care professionals to provide care in emergencies."  The court further found "to the extent that HHS addressed these concerns at all in the Rule, it did so in passing and in a conclusory manner," adding that "HHS's dismissive treatment of these issues ill-suited the gravity of these matters. It was quintessentially arbitrary and capricious."  Similarly here, USDA's cavalier

19

assertion that  SNAP recipients classified as ABAWDs have "ample opportunity" to find work activities in high unemployment areas where local agencies have only 30 days in which to contact them and find them placements shows an utter failure to consider the burden placed on the local agencies and the consequent hardship suddenly imposed on 100,000 SNAP recipients classified as ABAWD.

### D.  The Balance of Hardships Tips Toward Plaintiffs

Where, as here, the government is a party to the suit, the balance of hardships and public interest merge as one factor. *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 58–59 (2d Cir. 2020); *see also Saget v. Trump*, 375 F. Supp. 3d 280 (E.D.N.Y. 2019) ("[B]ecause the Government is a party, and 'the Government's interest is the public interest,'" the two factors merge.). Here, the Plaintiffs are seeking a temporary restraining order and preliminary injunction to preserve the status quo while the underlying claim regarding the USDA's violation of the APA is heard, in order to protect SNAP recipients classified as ABAWD from accruing countable months that can result in the loss of subsistence benefits. Protecting SNAP recipients from potential loss of benefits is decidedly in the public interest.

In contrast, any harm to Defendants is minimal. The ABAWD waiver is already scheduled to terminate at the end of February 2026. There is no cognizable injury to the USDA if this prevents it from prematurely terminating the waiver effective November 1, 2025. Meanwhile, as detailed above, the harm to SNAP recipients currently classified as ABAWD is certain, immediate, and cumulative.

## II.    THE COURT SHOULD CERTIFY THE PROPOSED PLAINTIFF CLASS.

### A.    Proposed Class Satisfies Rule 23(a)(1)–(4)

Plaintiffs seek certification of a class consisting of the following members: all New York

City SNAP recipients who are classified as ABAWD pursuant to USDA regulations who will

become subject to ABAWD work requirements effective November 2, 2025, as a result of

USDA's October 3 memorandum. Plaintiffs' motion should be granted, as this action meets all

the applicable class certification requirements of Rule 23(a) and (b)(2) of the Federal Rules of

Civil Procedure.

### 1.    The Proposed Class Is Sufficiently Numerous That Joinder of All Members Is Impracticable

The proposed class, which contains at least 100,000 SNAP recipients who are currently

classified as ABAWD by HRA, satisfies numerosity. Numerosity requires that "the class is so

numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Second

Circuit has held that "[n]umerosity is presumed for classes larger than forty members."

*Pennsylvania Pub. Sch. Employees' Ret. System v. Morgan Stanley & Co., Inc*., 772 F.3d 111,

120 (2d Cir. 2014) (as amended (Nov. 12, 2014)) (citing *Consol. Rail Corp. v. Town of Hyde

Park*, 47 F.3d 473, 483 (2d Cir. 1995)). The Court may find numerosity where plaintiffs

plausibly allege a sufficient number of class members, even absent precise numbers. *See, e.g.,

K.A. v. City of New York*, 413 F. Supp. 3d 282, 302 (S.D.N.Y. 2019).  According to HRA, there

are currently 100,000 SNAP recipients classified as ABAWD. which is sufficient to meet the

numerosity requirement.

Plaintiffs' proposed class should be certified not only because of the sheer number of

members, but because of the impracticability of joinder of these individuals. "Impracticable does

not mean impossible, but simply difficult or inconvenient." *Reynolds v. Giuliani*, 118 F. Supp. 2d

21

352, 388 (S.D.N.Y. 2000), *citing*, *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). Rather, the court must assess whether "the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244–45 (2d Cir. 2007). The proposed Class is clearly so numerous that joinder of all members would be impracticable. Plaintiffs therefore satisfy the requirements of Rule 23(a)(1).

## 2.  There Are Questions of Law or Fact Common to the Class

Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The class claims "must depend upon a common contention… of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "In other words, the relevant inquiry is whether a class wide proceeding is capable of generating common answers apt to drive the resolution of the litigation." *Jacob v. Duane Reade, Inc.*, 602 F. App'x. 3, 6 (2d Cir. 2015) (internal quotation marks, alteration, and citation omitted). Other courts in this circuit have noted "that 'the test for commonality is not demanding' and is met so long as there is at least one issue common to the class." *Raymond v. Rowland,* 220 F.R.D. 173, 179 (D. Conn. 2004) (quoting *Mullen v. Treasure Chest Casino, LLC.*, 186 F.3d 620, 625 (5th Cir. 1999)); *see also Barrows v. Becerra*, 24 F.4th 116, 131 (2d Cir. 2022) ("Rule 23(a)(2) simply requires that there be issues whose resolution will affect all or a significant number of the putative class members." (quoting *Johnson v. Nextel Communs., Inc.*, 780 F.3d 128, 137 (2d Cir. 2015)). For instance, *Raymond* held that a proposed plaintiff class alleging that the Connecticut Department of Social Services did not maintain accessible procedures for benefits applications satisfied this requirement. 220 F.R.D. at 179–80.

This action readily meets this requirement. The core questions in this case are whether USDA exceeded its lawful authority in prematurely terminating New York's ABAWD waiver, and whether its action was taken without consideration of important aspects of the problem its action was taken to address and failed to provide a reasoned explanation of its actions. Because these questions are common to the class, Plaintiffs satisfy the requirements of Rule 23(a)(2).

### 3.    The Named Plaintiff's Claims Are Typical of the Claims of the Class

Typicality exists if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3). To demonstrate typicality, "the party seeking certification must show that 'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Flag Telecom Holdings, Ltd. Securities Litigation*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Robidoux*, 987 F.2d at 936). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.2d at 936–37. The Supreme Court has noted that the commonality and typicality requirements "tend to merge" because "[b]oth serve as guideposts for determining whether… the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Telephone Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

As with the common issues of law and fact present throughout the proposed class, the typicality of the named Plaintiff's claims, as compared with those of the absent class members, is evident. The claims arise from the same course of events and conduct.

Ms. Miguel has been classified by HRA as ABAWD and therefore is presumptively

subject to ABAWD work requirements and time limits when New York's waiver expires. She

will therefore be subject to "countable months" starting in December 2025 which will place her

at risk of losing her SNAP benefits in the near future and will permanently place her at a legal

disadvantage should she be unable to work in the future. If USDA's action were stayed, Ms.

Miguel would have until the end of February to demonstrate to HRA that she should be exempt

from work requirements, or to seek HRA's assistance in placing her in work assignments that

comply with federal requirements.

The named Plaintiff's claims are accordingly typical of the claims of the proposed Class

and therefore satisfy the requirements of Rule 23(a)(3).

### 4.    The Named Plaintiff Will Fairly and Adequately Protect the Interests of the Class.

Ms. Miguel and her counsel will adequately represent the interest of the class. Adequacy

of representation exists if "the representative parties will fairly and adequately protect the

interests of the class." Fed. R. Civ. P. 23(a)(4). The commonality and typicality requirements

further "tend to merge with the adequacy-of-representation requirement, although the latter

requirement also raises concerns about the competency of class counsel and conflicts of interest.

*Falcon*, 457 U.S. at 157 n.13.

Analysis of the adequacy requirement focuses on whether "the class representatives have

any 'interests antagonistic to the interests of other class members' and whether the

representatives 'have an interest in vigorously pursuing the claims of the class.'" *McIntire v.*

*ODS Capital LLC (In re Patriot Nat'l, Inc. Sec. Litig.)*, 828 F. App'x 760, 764 (2d Cir. 2020)

(quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)) (citation omitted). "In

order to defeat a motion for certification… the conflict must be fundamental." *In re Flag*

*Telecom*, 574 F.3d at 35 (citation and internal quotation marks omitted). No such conflict exists in this case.

Ms. Miguel and members of the proposed class are represented by undersigned counsel from the Legal Aid Society. Plaintiffs' counsel includes attorneys with extensive experience in both class action and individual affirmative litigation in federal and state court, on behalf of impoverished individuals challenging state and federal governmental actions depriving them of public assistance benefits.

Ms. Miguel has no interests antagonistic to those of the members of the class. She has been subject to the same premature waiver of ABAWD work requirements, and the same consequent risk of losing future SNAP benefits as the absent class members. Ms. Miguel is seeking enforcement of federal rights in a manner that would benefit all members of the class equally. Plaintiffs therefore satisfy the requirements of Rule 23(a)(4).

### B.  The Plaintiff Class Should be Certified Under Rule 23(b)(2)

Plaintiffs seek class certification for declaratory and injunctive relief only. Rule 23(b)(2) provides that class certification is appropriate if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) applies when "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Barrows v. Becerra*, 24 F.4th 116, 132 (2d Cir. 2022).

Plaintiffs' suit under the APA to enjoin Defendant's unlawful termination of New York's ABAWD waiver is precisely the type of action warranting class certification. Plaintiffs do not seek compensatory damages. Rather, they allege a systemic deprivation of their rights applicable

to all class members and seek compliance with these mandates through an order granting class-wide injunctive relief against the Defendant. This Court need not engage in any individualized assessments of plaintiff harm. "'Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples' of what (b)(2) is meant to capture." *Allen v. Koenigsmann*, No. 19-CV-8173, 2023 WL 2731733 at *4 (S.D.N.Y. 2023), *aff'd sub nom. Daniels v. Moores*, No. 24-30-PR, 2025 WL 883035 (2d Cir. Mar. 21, 2025), *citing, Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Plaintiffs' action seeking class-wide injunctive relief is therefore appropriate for certification under Rule 23(b)(2).

Plaintiffs thus satisfy every requirement of Rules 23(a) and 23(b)(2). Accordingly, a class action is the only appropriate procedural device for addressing the common claims asserted by hundreds of individuals impacted by Defendants' failure to provide reasonable accommodations that would protect them from eviction and homelessness. Plaintiffs respectfully request that the proposed class be certified.

## **CONCLUSION**

Plaintiffs have demonstrated irreparable harm, a likelihood of success or serious question going to the merits, and that the balance of equities tip clearly in favor of Plaintiffs. Plaintiffs have thus established their entitlement to a temporary restraining order and a preliminary injunction Plaintiffs also meet all the requirements for class certification. Therefore, Plaintiffs respectfully request that the Court grant their motion for class certification and preliminary injunctive relief and enjoin the USDA from prematurely terminating the ABAWD waiver currently in effect through February 28, 2026.

Dated: October 27, 2025
     New York, New York

                Respectfully submitted,

                *Pavita Krishnaswamy*

                THE LEGAL AID SOCIETY

                Judith Goldiner
                Edward Josephson
                Pavita Krishnaswamy
                Laboni Rahman
                Emily Lundgren
                Susannah Howe
                Civil Law Reform Unit
                49 Thomas Street, 5th Floor
                New York, New York 10013
                (212) 298-5219
                pkrishnaswamy@legal-aid.org

                ***Attorneys for Plaintiffs***