UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

URBAN JUSTICE CENTER-SAFETY NET
PROJECT (UJC-SNP), *et al.,*

                             Plaintiffs,

                  v.

BROOKE ROLLINS, in her official capacity as
Secretary of the United States Department of
Agriculture,

                             Defendant.

No. 25 Civ. 8869 (NRB)

---

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY
INJUNCTION AND FOR CLASS CERTIFICATION**

JAY CLAYTON
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-3274/2614
*Attorney for Defendant*

MOLLIE KORNREICH
REBECCA L. SALK
*Assistant United States Attorneys*
    - Of Counsel -

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT..................................................................................................1

BACKGROUND .......................................................................................................................2

    I.    The ABAWD SNAP Work Requirement ........................................................2

    II.   New York's 2024 SNAP Waiver ....................................................................5

    III.  The Current Action .........................................................................................5

LEGAL STANDARD ...............................................................................................................6

ARGUMENT ............................................................................................................................7

    I.    A Preliminary Injunction Is Unwarranted.....................................................7

        A.    Plaintiffs Fail to Demonstrate Irreparable Harm.............................7

            1.    Harms Alleged by Ms. Miguel/Individual Members of the Proposed Class ........................................................8

            2.    Harms Alleged by UJC-SNP ..............................................10

        B.    Plaintiffs Cannot Demonstrate a Likelihood of Success on the Merits .............................................................................11

            1.    Plaintiffs Lack Article III Standing..................................11

                a)    UJC-SNP Lacks Standing ...................................12

                b)    Ms. Miguel Lacks Standing ................................14

            2.    Plaintiffs Are Unlikely to Succeed on the Merits of Their APA Claims .........................................................14

        C.    The Balance of Equities and Public Interest Weigh in Favor of the Defendant.......................................................................15

    II.   The Court Should Not Certify Plaintiffs' Proposed Class ....................................16

        A.    The Rule 23 Requirements...............................................................10

        B.    Plaintiffs Fail to Satisfy the Ascertainability Requirement........................18

C.    The Proposed Class Does Not Meet Rule 23(a)'s Commonality, Typicality, or Adequacy Requirements ........................................................................19

D.    Plaintiffs Fail to Satisfy the Rule 23(b)(2) Requirements ........................21

CONCLUSION ............................................................................................................................22

# TABLE OF AUTHORITIES

**CASES**                                                                                 **PAGE(s)**

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................ 17

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  222 F.3d 52 (2d Cir. 2000) ..................................................................... 20

*Berni v. Barilla S.p.A.*,
  964 F.3d 141 (2d Cir. 2020) ............................................................. 21, 22

*Brecher v. Republic of Argentina*,
  806 F.3d 22 (2d Cir. 2015) ..................................................................... 17

*Brown v. Kelly*,
  609 F.3d 467 (2d Cir. 2010) ................................................................... 21

*C.C. v. New York City Dep't of Educ.*,
  No. 20-CV-1915 (GBD) (SLC), 2021 WL 4507550 (S.D.N.Y. Sept. 30, 2021),
  *objections overruled*, 2022 WL 522423 (S.D.N.Y. Feb. 22, 2022),
  *aff'd*, No. 22-0459, 2023 WL 2545665 (2d Cir. Mar. 17, 2023) ....................... 7

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ................................................................................ 16

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007) ................................................................... 12

*Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*,
  868 F.3d 104 (2d Cir. 2017) ............................................................. 12, 13

*Citibank, N.A. v. Citytrust*,
  756 F.2d 273 (2d Cir. 1985) .................................................................. 7, 9

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ................................................................................ 11

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) .................................................................................. 16

*CRP/Extell Parcel I, L.P. v. Cuomo*,
  394 F. App'x 779 (2d Cir. 2010) .............................................................. 8

*E. Tex. Motor Freight System, Inc. v. Rodriguez*,
    431 U.S. 395 (1977)......................................................................................... 21

*Expedia, Inc. v. United Airlines, Inc.*,
    No. 19-CV-1066 (PKC), 2019 WL 1499269 (S.D.N.Y. Apr. 5, 2019)............................ 11

*FDA v. Alliance for Hippocratic Med.*,
    602 U.S. 367 (2024)................................................................................... 11, 12

*Frank v. Gaos*,
    586 U.S. 485 (2019)......................................................................................... 12

*Geller v. de Blasio*,
    613 F. Supp. 3d 742 (S.D.N.Y. 2020) ................................................................ 6

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982)............................................................................... *passim*

*Gill v. Whitford*,
    585 U.S. 48 (2018)......................................................................................... 13

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
    481 F.3d 60 (2d Cir. 2007) .................................................................... 6, 8, 9

*Greater Chautauqua Federal Credit Union v. Quattrone*,
    No. 22 Civ. 2753 (MKV), 2025 WL 869729 (S.D.N.Y. Mar. 20, 2025)................... 21, 22

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
    341 F.R.D. 128 (D. Md. 2022) ......................................................................... 20

*In re Petrobras Securities*,
    862 F.3d 250 (2d Cir. 2017) .................................................................. 17, 18, 19

*Jelen v. United States Marshals Serv.*,
    No. 18 Civ. 680 (WHP), 2019 WL 1988572 (S.D.N.Y. May 6, 2019) ............................ 9

*Loc. 1159 of Council 4 AFSCME, AFL-CIO v. City of Bridgeport*,
    435 F. Supp. 3d 400 (D. Conn. 2020) ................................................................ 9

*Local 1814, Int'l Longshoreman's Ass'n, AFL-CIO v. N.Y. Shipping Ass'n*,
    965 F.2d 1224 (2d Cir. 1992) .......................................................................... 6

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)......................................................................................... 11

*Maryland v. King*,
    567 U.S. 1301 (2012) ................................................................................ 16

*Moore v. Consol. Edison Co. of New York*,
    409 F.3d 506 (2d Cir. 2005) ....................................................................... 10

*Myers v. Herz Corp.*,
    624 F.3d 537 (2d Cir. 2010) ....................................................................... 17

*Naden v. Numerex Corp.*,
    593 F. Supp. 2d 675 (S.D.N.Y. 2009) ........................................................ 10

*New York v. United States Dep't of Homeland Sec.*,
    969 F.3d 42 (2d Cir. 2020) .................................................................... 7, 13

*Nken v. Holder*,
    556 U.S. 418 (2009) ................................................................................... 15

*Peck v. Montefiore Medical Ctr.*,
    987 F. Supp. 2d 405 (S.D.N.Y. 2013) .......................................................... 7

*Plaintiffs' reliance on Metro. Transportation Auth. v. Duffy*,
    784 F. Supp. 3d 624 (S.D.N.Y. 2025) ........................................................ 15

*Purgess v. Parauda*,
    No. 20 Civ. 2984 (RA), 2021 WL 2269540 (S.D.N.Y. June 3, 2021) .............. 8

*Rodriguez ex rel. Rodriguez v. DeBuono*,
    175 F.3d 227 (2d Cir. 1999) ......................................................................... 7

*Safe Haven Home Care, Inc. v. United States Dep't of Health & Hum. Servs.*,
    130 F.4th 305 (2d Cir. 2025) ..................................................................... 15

*Spagnola v. Chubb Corp.*,
    264 F.R.D. 76 (S.D.N.Y. 2010) ................................................................. 18

*Students for Fair Admissions v. U.S. Mil. Acad. at West Point*,
    709 F. Supp. 3d 118 (S.D.N.Y. 2024) .......................................................... 6

*TransUnion, v. Ramirez*,
    594 U.S. 413 (2021) ................................................................................... 11

*Trump v. CASA, Inc.*,
    145 S. Ct. 2540 (2025) ............................................................................... 22

*Waite v. UMG Recordings, Inc.*,
    No. 19 Civ. 10901, 2023 WL 1069690 (S.D.N.Y. Jan. 27, 2023) .................................... 22

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................................ *passim*

*We The Patriots USA, Inc. v. Hochul*,
    17 F.4th 266 (2d Cir. 2021) ............................................................................ 6

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ............................................................................ 6

## STATUTES

7 U.S.C. § 2013(a) ............................................................................ 2, 3

7 U.S.C. § 2015(d)(2) ............................................................................ 3, 18

7 U.S.C. § 2015(o)(3) ............................................................................ 3

7 U.S.C. § 2015(o)(4) ............................................................................ 4, 14, 15

7 U.S.C. § 2015(o)(5) ............................................................................ 4

7 U.S.C. § 2015(o)(6) ............................................................................ 4

7 U.S.C. § 2020(a) ............................................................................ 3

Pub. L. 119-21, July 4, 2025, 139 Stat 72 ............................................................................ 4

Pub. L. No. 95-113 § 6, 91 Stat. 913 ............................................................................ 3

Pub. L. No. 104-193, 110 Stat. 2105 (1996) ............................................................................ 3

Pub. L. No. 91-671 § 4 ............................................................................ 3

## RULES

Fed. R. Civ. P. 23(a) ............................................................................ 2, 17, 19

Fed. R. Civ. P. 23(a)(4) ............................................................................ 20

Fed. R. Civ. P. 23(b)(2) ............................................................................ 17, 21

**REGULATIONS**

7 C.F.R. § 271.3(a) ................................................................................................ 3

7 C.F.R. § 273.24(a)(2) ......................................................................................... 4

7 C.F.R. § 273.24(d) ............................................................................................. 4

7 C.F.R. § 273.24(f) .......................................................................................... 5, 14

7 C.F.R. § 273.24(k) .............................................................................................. 3

Defendant Brooke Rollins, in her official capacity as Secretary of the United States Department of Agriculture ("Defendant" or the "Government") submits this Memorandum of Law in Opposition to Plaintiffs' Motion for a Temporary Restraining Order and a Preliminary Injunction and for Class Certification. ECF Nos. 2 and 3.

## PRELIMINARY STATEMENT

This case arises from Congress's legislative action to modify the available bases for waiver of certain federal work requirements of the Supplemental Nutrition Assistance Program ("SNAP"). In July 2025, the One Big Beautiful Bill Act of 2025 repealed the provision of the Food and Nutrition Act of 2008 that gave the Secretary authority to approve these waivers based on certain ground, which had been the basis for a waiver previously granted to New York State. As a result, on October 3, 2025, the Government informed the relevant New York State agency that the waiver, which had previously been set to expire on February 28, 2026, would be terminated on November 2, 2025, because it no longer had a permissible statutory basis. Plaintiffs filed this putative class action asserting claims under the Administrative Procedure Act ("APA") to challenge that termination decision, and they seek a temporary restraining order and preliminary injunction enjoining termination of the waiver. They also seek to certify a class consisting of all New York City SNAP benefit recipients who are classified as able-bodied adults without dependents ("ABAWD") who will become subject to federal work requirements as a result of the termination of the waiver. Plaintiffs are not entitled to this extraordinary relief, for several reasons. Nor have they satisfied the standards for class certification.

First, Plaintiffs fail to demonstrate, as they must to obtain a preliminary injunction, that they will suffer irreparable harm absent that injunction. As Plaintiffs concede, the earliest that an individual classified as an ABAWD can lose access to SNAP benefits as a result of the challenged waiver termination is March 1, 2026. Despite Plaintiffs' claims to the contrary, the allegations of

harm stemming from the Government's decision to terminate New York State's waiver are far too speculative, attenuated, and easily remedied by court order to justify injunctive relief.

Second, Plaintiffs fail to show a clear or substantial likelihood of success on the merits. As an initial matter, Plaintiffs lack standing to bring their claims—they have not shown that they will suffer any cognizable injury that is traceable to the challenged decision and redressable by the relief they seek from the Court. And even if they could overcome that hurdle, Plaintiffs fail to show a substantial likelihood of success on their APA claims, as they are unlikely to be able to show that the agency waiver termination was arbitrary, capricious, or contrary to law.

Third, the balance of the equities and the public interest favor the Government, providing an independent reason to deny Plaintiffs' request for injunctive relief. The public interest weighs in favor of implementation of statutory requirements duly promulgated by Congress to support the public welfare.

Finally, Plaintiffs have not satisfied the elements necessary to certify a class. In particular, Plaintiffs fail to meet their burden in establishing commonality, typicality, or adequacy as required by Federal Rule of Civil Procedure 23(a). Nor have they established the implied requirement of ascertainability, or the requirements of Rule 23(b)(2).

For all these reasons, Plaintiffs' motion for a temporary restraining order and preliminary injunction should be denied, as should Plaintiffs' motion for class certification.

## BACKGROUND

### I.    The ABAWD SNAP Work Requirement

The Supplemental Nutrition Assistance Program ("SNAP") offers nutrition assistance to qualified low-income households.[1] USDA is authorized to "formulate and administer" SNAP, 7

---

[1] Until 2008, SNAP was known as the Food Stamp Program. For clarity, the Government uses the term "SNAP" in this memorandum of law to refer to the program both before and after 2008.

U.S.C. § 2013(a), and generally delegates administration of the program to the Food and Nutrition Service ("FNS"), a component within USDA, *see* 7 C.F.R. § 271.3(a). USDA shares responsibility with State agencies for the administration of SNAP benefits, 7 U.S.C. § 2020(a); *id.* § 2025(a). The federal government funds all SNAP benefits, *id.* § 2013(a), and a portion of State administrative costs, *id.* § 2025(a). Congress has conferred broad rulemaking authority on USDA to implement SNAP. *See id.* § 2013(c) ("The Secretary shall issue such regulations consistent with this chapter as the Secretary deems necessary or appropriate for the effective and efficient administration of [SNAP.]"). SNAP has several goals, including addressing food insecurity by providing supplemental food assistance to low-income households and promoting employment. *Id.* § 2011.

For decades, Congress has directed that SNAP eligibility be tied to work-related requirements. *See, e.g.*, Act of Jan. 11, 1971, Pub. L. No. 91-671 § 4, 84 Stat. 2048, 2049; Food Agriculture Act of 1977, Pub. L. No. 95-113 § 6, 91 Stat. 913. In 1996, Congress strengthened these requirements for SNAP participants through the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA"). *See* Pub. L. No. 104-193, 110 Stat. 2105 (1996). These work requirements apply to only a subset of SNAP recipients—able-bodied adults without dependents ("ABAWDs")—who do not fall within certain exceptions. *See* 7 U.S.C. § 2015(o)(3). By statutory definition, the work requirements apply only to individuals between the ages of 18 and 65 who are not medically certified as physically or mentally unfit for employment, responsible for a dependent child under 14 years old, pregnant, responsible for the care of an incapacitated person, or subject to certain other limited exceptions. 7 U.S.C. §§ 2015(d)(2), (o)(3)(A)-(G). States are required to screen SNAP recipients to determine if they fall within the permissible exceptions. *See* 7 C.F.R. 273.24(k).

Within a three-year period, anyone who qualifies as an ABAWD may generally receive SNAP benefits for only three months within which he or she did not work at least 20 hours a week (averaged monthly), participate in a work program for at least 20 hours per week, participate in a workfare program, or receive benefits pursuant to a waiver under 7 U.S.C. § 2015(o)(4) or a discretionary exemption under 7 U.S.C. § 2015(o)(6). *Id.* § 2015(o)(2). An ABAWD is not required to find paid employment; "working" is defined by regulation to include any combination of work in exchange for money, work in exchange for goods or services, or "[u]npaid work." 7 C.F.R. § 273.24(a)(2). If an ABAWD is covered by a waiver for part of a particular month, that month does not count towards the three-month limit. *See id.* § 273.24(f).

An individual who fails to meet these requirements can regain SNAP eligibility by working for 80 or more hours a month or complying with the requirements of a work program. 7 U.S.C. § 2015(o)(5); 7 C.F.R. § 273.24(d), (e). If an individual regains eligibility and then again fails to meet the work requirement, they may receive three consecutive months of benefits without meeting the work requirements, but can avail themselves of this "grace period" only once within a three-year period. *Id.* § 273.24(e).

Previously, the Secretary of Agriculture, upon the request of a State, could waive the applicability of the work requirement "to any group of individuals in the State" if she determined that "the area in which the individuals reside (i) has an unemployment rate of over 10 percent; or (ii) does not have a sufficient number of jobs to provide employment for the individuals." 7 U.S.C. § 2015 (o)(4) (August 22, 1996). But Congress, via the One Big Beautiful Bill Act of 2025 ("OBBB," which was signed into law on July 4, 2025), removed clause (ii) as a permissible ground for waiver of the work requirement. Pub. L. 119-21, July 4, 2025, 139 Stat 72.

## II.    New York's 2024 SNAP Waiver

On October 2, 2024, FNS granted New York State's request for a waiver, from March 1, 2025, to February 28, 2026, of SNAP's three-month time limit for ABAWDs in 61 New York counties to receive benefits without meeting the ABAWD work requirements. Declaration of Mollie Kornreich ("Kornreich Decl.") Ex. 1 at 1-2 (the "October 2024 Waiver"). The letter communicating grant of the waiver noted that the State was required to "continue tracking [ABAWDs] so that the State agency will be ready to transition off the waiver when it expires and reintroduce the time limit." *Id*. at 1.

On October 3, 2025, FNS issued a memorandum to SNAP State agencies with active ABAWD waivers (the "October 2025 Memorandum" or "Memorandum") providing notice that, because following passage of the OBBB "there is no longer authority for ABAWD waivers based on a lack of sufficient jobs, FNS will terminate all remaining such waivers 30 days from the issuance of this letter." Kornreich Decl. Ex. 2 at 1. The Memorandum noted that this would result in termination of New York's ABAWD waiver. *Id*. New York State's Waiver will therefore end on November 2, 2025 (30 days from the date of the Memorandum). But because SNAP beneficiaries in the covered New York counties fell under the waiver for part of the month of November, December 2025 will be the first month that may count towards the three months that each ABAWD need not comply with SNAP work requirements. *See* 7 C.F.R. § 273.24(f).

## III.    The Current Action

Plaintiffs filed their Complaint initiating this matter on October 27, 2025. ECF No. 1. The Complaint asserts two claims for violation of the Administrative Procedure Act ("APA"). First, Plaintiffs assert that the October 2025 Memorandum was arbitrary and capricious and not in accordance with law because USDA lacked authority to terminate the October 2024 Waiver. Second, Plaintiffs claim that the October 2025 Memorandum was arbitrary and capricious because

USDA failed to provide a reasoned explanation or consider an important aspect of the problem, namely whether New York would be able to effectively implement screening and referral processes to enable ABAWD recipients to comply with SNAP requirements, and the impact on ABAWD SNAP recipients.

On the same day that Plaintiffs filed their Complaint, they filed an Order to Show Cause as to why a preliminary injunction should not be entered staying Defendant from terminating the October 2024 Waiver, ECF No. 2, along with a Memorandum of Law in Support of a Motion for a Temporary Restraining Order and Preliminary Injunction, and for Class Certification, ECF No. 3 ("Pl. Br.").

## LEGAL STANDARD

"A preliminary injunction 'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Students for Fair Admissions v. U.S. Mil. Acad. at West Point*, 709 F. Supp. 3d 118, 129 (S.D.N.Y. 2024) (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008). "The standard for determining whether to grant a motion for a temporary restraining order is the same as used in evaluating a motion for a preliminary injunction." *Geller v. de Blasio*, 613 F. Supp. 3d 742, 746 (S.D.N.Y. 2020) (citing *Local 1814, Int'l Longshoreman's Ass'n, AFL-CIO v. N.Y. Shipping Ass'n*, 965 F.2d 1224, 1228 (2d Cir. 1992)). "When the government is a party to the suit, [the] inquiries into the public interest and the balance of the equities merge." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 295 (2d Cir. 2021).

Notably, where one element of the preliminary injunction analysis is not met, "[i]t is unnecessary to proceed through the entire preliminary injunction analysis[.]" *C.C. v. New York City Dep't of Educ.*, No. 20-CV-1915 (GBD) (SLC), 2021 WL 4507550, at *7 (S.D.N.Y. Sept. 30, 2021), *objections overruled*, 2022 WL 522423 (S.D.N.Y. Feb. 22, 2022), *aff'd*, No. 22-0459, 2023 WL 2545665 (2d Cir. Mar. 17, 2023). For example, if "a party moving for a preliminary injunction cannot establish irreparable harm, there is 'no need' for the court to consider that party's likelihood of success on the merits, and the application may be denied." *Id.*; *Peck v. Montefiore Medical Ctr.*, 987 F. Supp. 2d 405, 413 (S.D.N.Y. 2013) (finding that there was no "no need" to reach the likelihood of success on the merits because defendant had shown that plaintiff failed to establish irreparable harm).

## ARGUMENT

### I.    A Preliminary Injunction Is Unwarranted

As discussed further below, the Court may deny Plaintiffs' request for a preliminary injunction based on a lack of standing alone. To the extent the Court does reach the merits of Plaintiffs' claim, however, it should deny their request for a temporary restraining order because each of the *Winter* factors weighs against granting that extraordinary relief.

### A.    Plaintiffs Fail to Demonstrate Irreparable Harm

First, Plaintiffs have not made any showing that they would suffer irreparable harm absent a preliminary injunction. As the Second Circuit has recognized, "perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 275 (2d Cir. 1985) (internal quotation marks omitted). "Irreparable harm is injury that is neither remote nor speculative," *New York v. United States Dep't of Homeland Sec.*, 969 F.3d 42, 86 (2d Cir. 2020), but rather is "actual and imminent," *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227,

234 (2d Cir. 1999). Given the primacy of irreparable harm in the temporary restraining order analysis, "the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Grand River Enter. Six Nations*, 481 F.3d at 66 (internal quotation marks omitted). Plaintiffs have not met that burden for the reasons discussed below.

### 1. Harms Alleged by Ms. Miguel/Individual Members of the Proposed Class

As reflected in the declaration submitted by Plaintiff Laeticia Miguel in support of Plaintiffs' motion, the allegations of harm stemming from the early termination of New York State's ABAWD waiver are speculative and conclusory and therefore fail to justify a TRO or preliminary injunction. First, Plaintiffs assert that Ms. Miguel, and others like her, will lose their SNAP benefits because they will not be able to find a job. *See* Amended Declaration of Laeticia Miguel ("Miguel Decl."), ECF No. 15, ¶ 25 ("If I have to find a job in order to keep my SNAP benefits, I am very worried that I will lose my benefits, because in the past I have not been able to find a job that accommodates my husband's care needs."). Similarly, Plaintiffs assert that Ms. Miguel may not be able to reach the New York City Human Resources Administration ("HRA," the relevant New York City office that administers SNAP benefits) to determine whether she is otherwise exempt from ABAWD work requirements, and HRA may "not take action to approve an exemption even if [she] can reach them." *Id.* ¶ 24. But such assertions are entirely speculative and cannot support the imposition of injunctive relief. *See CRP/Extell Parcel I, L.P. v. Cuomo*, 394 F. App'x 779, 782 (2d Cir. 2010) (denying preliminary injunction where harm alleged was "purely speculative"); *Purgess v. Parauda*, No. 20 Civ. 2984 (RA), 2021 WL 2269540, at *4 (S.D.N.Y. June 3, 2021) (finding "speculative and conclusory statements" insufficient to establish irreparable harm).

As explained, the earliest that an ABAWD could lose SNAP benefits as a result of the

USDA's termination of the waiver is March 1, 2026—three months after December 1, 2025. *See* Pl. Br. at 4 n.2. (explaining that although the current waiver is effective November 2, 2025, an ABAWD will begin to accrue non-compliant months beginning on December 1, 2025). Plaintiffs therefore ask the Court to assume, without evidence, that (i) Ms. Miguel will fail to find any kind of employment (paid or unpaid) that would satisfy the SNAP requirements (and thus will enable her to continue receiving benefits) before March 1, 2026, (ii) Ms. Miguel will be unable to get an in-person appointment or phone call with HRA before March 1, 2026, to discuss whether she is in fact otherwise exempt from ABAWD work requirements, and (iii) Ms. Miguel will not be able to obtain an exemption to ABAWD's work requirements before March 1, 2026, if she is deemed an ABAWD. These hypothetical scenarios are plainly insufficient to establish that the likelihood of harm is "actual and imminent." *See Loc. 1159 of Council 4 AFSCME, AFL-CIO v. City of Bridgeport*, 435 F. Supp. 3d 400, 410 (D. Conn. 2020) ("Preliminary injunctive relief cannot rest on mere hypotheticals." (internal quotation marks omitted)); *Jelen v. United States Marshals Serv.*, No. 18 Civ. 680 (WHP), 2019 WL 1988572, at *1 (S.D.N.Y. May 6, 2019) (denying injunctive relief where possibility of harm was too attenuated to be "actual and imminent").

Regardless, even if the Court were to credit Plaintiffs' speculative assertions, Plaintiffs' injuries are not truly irreparable, as Plaintiffs can be made whole after a decision on the merits is rendered. *See Grand River Enter. Six Nations, Ltd.*, 481 F.3d at 66 (explaining that the movant must show that they will suffer an injury that cannot be remedied if the court waits until the issues are decided on the merits); *see also Citibank N.A.*, 756 F.2d at 275. Plaintiffs argue that Ms. Miguel and members of the class may begin to accrue "countable months that will place them at increased risk of losing benefits" beginning on December 1, 2025. Pl. Br. at 6; *see also id.* at 12 ("Each countable month constitutes a permanent legal harm bring[ing] plaintiffs closer to the three-month

threshold. . . ."). However, it does not follow that Ms. Miguel will be irreparably harmed in the absence of preliminary injunctive relief. Should the Court find in Plaintiffs' favor following summary judgment briefing by the parties, the Court could rule that any non-compliant months from Ms. Miguel's and any class members' records should not be counted towards termination of SNAP benefits. Accordingly, the harms alleged by Ms. Miguel (and on behalf of the proposed class) do not support the issuance of either a TRO or preliminary injunction.

## 2.    Harms Alleged by UJC-SNP

The alleged harms to the named organizational Plaintiff Urban Justice Center-Safety Net Project ("UJC-SNP") are equally deficient. UJC-SNP asserts that as a result of the USDA's decision to terminate the waiver, UJC-SNP will be required to provide support in the community beyond its normal capacity, conduct additional trainings, and increase its advocacy with government actors. *See* Pl. Br. at 7, 13-14; *see also* Declaration of Helen Strom ("Strom Decl."), ECF No. 3-1, ¶¶ 9-10. However, UJC-SNP fails to explain how an accelerated timeline for the waiver's expiration (November 2, 2025, rather than February 28, 2026) has harmed it, given that it would presumably be engaging in the same actions—providing trainings, community outreach, etc.—in early 2026, given the statutory amendment. In other words, UJC-SNP fails to specify how expending its resources in November 2025, as opposed to February 2026, constitutes irreparable harm. *See, e.g., Naden v. Numerex Corp.*, 593 F. Supp. 2d 675, 681 (S.D.N.Y. 2009) (finding plaintiffs' affidavits insufficient to establish irreparable harm because their claims were "vague and unsubstantiated" and lacked "any detail" that would permit the court to evaluate the extent of the claimed harm).

Nor can UJC-SNP rely on the harms that will allegedly befall ABAWDs in the absence of an injunction. *See* Strom Decl. ¶¶ 11, 13-15. *See, e.g., Moore v. Consol. Edison Co. of New York,*

409 F.3d 506, 511 (2d Cir. 2005) (affirming district court's holding that "alleged harm to third parties did not provide plaintiff a basis for a preliminary injunction"); *Expedia, Inc. v. United Airlines, Inc.*, No. 19-CV-1066 (PKC), 2019 WL 1499269, at *6 (S.D.N.Y. Apr. 5, 2019) ("[I]njuries to third parties do not demonstrate that [the movant] itself will suffer irreparable harm.").

Because neither Ms. Miguel nor UJC-SNP have demonstrated that they will suffer irreparable harm in the absence of injunctive relief, the Court should deny Plaintiffs' motion for a TRO and/or preliminary injunction on this basis alone.

**B.    Plaintiffs Cannot Demonstrate a Likelihood of Success on the Merits**

**1.    Plaintiffs Lack Article III Standing**

As a threshold matter, Plaintiffs are unlikely to succeed on the merits of their claim because they lack standing. At its "irreducible constitutional minimum," Article III standing requires a plaintiff, as the party invoking the Court's jurisdiction, to establish three elements: (1) a concrete and particularized injury-in-fact, either actual or imminent, and not conjectural or hypothetical, (2) a causal connection between the injury and defendant's challenged conduct, and (3) a likelihood that the injury suffered will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). To establish injury-in-fact, Plaintiffs must show harm that is "actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon." *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 381 (2024). If the injury has not come to pass, it must be "*certainly impending*"; "allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks and alterations omitted). And the injury must be "concrete—that is, real, and not abstract." *TransUnion*, *v. Ramirez*, 594 U.S. 413, 424 (2021) (internal quotation marks omitted). Plaintiffs have failed to meet that burden here. In a class action, "federal courts lack jurisdiction if no named

plaintiff has standing." *Frank v. Gaos,* 586 U.S. 485, 492 (2019); *see also Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007).

**a)**    **UJC-SNP Lacks Standing**

UJC-SNP asserts that the waiver termination will require it to "provide support to its partners in the community, beyond the capacity of what they normally accept at their regular community clinics"; "do additional Know Your Rights events and trainings"; and "increase advocacy with government actors to try and push them to improve their implementation of the new work requirements." Pl. Br. at 7; *see also* Pl. Br. at 13-14; Strom Decl. ¶¶ 7-10. These alleged effects are speculative and presented with insufficient detail to establish that UJC-SNP has suffered a harm sufficient to confer standing as a result of the October 2025 Memorandum. *See All. for Hippocratic Med.*, 602 U.S. at 394 (holding that medical association plaintiffs could not establish standing through showing that FDA regulation had resulted in them conducting their own studies and devoting additional resources to public education, to the detriment of other spending priorities).

The cases Plaintiffs cite regarding standing involve more concrete harm to the plaintiff organizations than UJC-SNP has shown here. For example, *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104 (2d Cir. 2017), involved a First Amendment challenge to a town ordinance to regulate solicitation of employment. The Second Circuit found that a plaintiff entity that "work[ed] to advance the interests of day laborers in the area" had standing because the challenged ordinance would render its activities, such as meeting with an organizing day laborers, more difficult, impeding the organization's ability to carry out its responsibilities, and would also potentially expose its advocates to arrest. *Id.* at 110-11. Additionally, the ordinance would require diversion of funding because advancing the

12

organization's interests (*i.e.*, organizing workers) would become more costly. *Id.* Here, in contrast, UJC-SNP makes the conclusory assertion that there will be an increased need for its advocacy and advising services, Pl. Br. at 13, but provides no details regarding how its work will become more difficult or costly.[2]

In any event, Plaintiffs appear to concede, as they must, that the October 2024 Waiver was already set to expire in February 2026. *See, e.g.*, Complaint ¶ 93 (referring to revocation of "New York's ABAWD Waiver prior to its lawful expiration on February 28, 2026"). Plaintiffs do not explain why the alleged harms they identify to UJC-SNP—which they contend establish standing and injury on the basis that the agency will have to divert its resources as a result of the October 2025 Memorandum, Pl. Br. at 13-14—are any heavier than they would be if the waiver expired as previously scheduled in February 2026. In other words, any harms to UJC-SNP appear to stem simply from the end of the waiver, whether in November 2025 or February 2026, and not specifically from the October 2025 termination, which is all that is challenged here. In short, Plaintiffs have failed to establish any causal connection between the October 2025 Memorandum and the asserted harm to UJC-SNP, nor have they shown that any such harm could be redressed by a Court order that the waiver must run through February 2026. A plaintiff's remedy must "be tailored to redress the plaintiff's particular injur[ies]." *Gill v. Whitford*, 585 U.S. 48, 73 (2018). Regardless of whether the requested preliminary injunction is granted, UJC-SNP will presumably have to make the resource allocation changes it describes in its briefing no matter when the waiver expires.

---

[2] Similarly, in *New York v. United States Dep't of Homeland Sec.,* 969 F.3d 42, 61 (2d Cir. 2020), the organizations at issue established that they had diverted significant resources by, for example, hiring additional staff members; changing the nature of their educational outreach; and funding public service announcements. UJC-SNP does not claim that it will face similar increased strain on its resources.

**b)**    <u>**Ms. Miguel Lacks Standing**</u>

The individual plaintiff, Ms. Miguel, fares no better, as she also asserts only speculative harm. Indeed, Ms. Miguel acknowledges that she has received conflicting information from New York State regarding whether she is characterized as an ABAWD, and that one "screen on Access HRA stated that [she is] 'non-ABAWD and not subject to ABAWD rules." Miguel Decl., ¶ 23. Further, to the extent Ms. Miguel is deemed an ABAWD currently—which is far from clear—she has failed to establish a likelihood that she will be unable to apply for a change of status, or that, if such a request is denied, she will be unable to retain her benefits by meeting SNAP's work requirements (which can be satisfied through paid or unpaid labor for 20 hours a week, or a work program). Ms. Miguel therefore falls well short of establishing an actual or imminent likelihood that she will lose her SNAP benefits any earlier as a result of the October 2025 Memorandum.

**2.   Plaintiffs Are Unlikely to Succeed on the Merits of Their APA Claims**

Even if Plaintiffs could overcome the threshold standing issue, they are unlikely to succeed in establishing that the decision to terminate the October 2024 Waiver was arbitrary, capricious, or otherwise not in accordance with law. Compl. ¶¶ 90-102. Plaintiffs first contend that USDA lacked authority to terminate the October 2024 Waiver. *See* Pl. Br. at 15-17. But grant of the waiver is indisputably within the agency's discretion—the relevant statutory provision states that the Secretary "*may* waive the applicability" of the SNAP work requirements. *See* 7 U.S.C. § 2015(4)(A) (emphasis added); *see also* 7 C.F.R. § 273.24(f) ("On the request of a State agency, FNS *may* waive the time limit for a group of individuals in the State . . . ." (emphasis added)). Plaintiffs provide no statutory or regulatory support for the argument that this discretion does not

14

encompass the power to also terminate the waiver if the agency determines that it is no longer supportable under the governing statute.[3]

Further, contrary to Plaintiffs' assertion, Pl. Br. at 17, FNS provided a rational justification for terminating the October 2024 Waiver. As the October 2025 Memorandum explained, "[t]he OBBB removed the criterion allowing for approval of waivers for areas that States identified as having 'a lack of sufficient jobs.'" *See* Kornreich Decl., Ex. 2. "Because there is no longer authority for ABAWD waivers based on a lack of sufficient jobs," New York's waiver will be terminated. *Id*. This reasonable discretionary determination was entirely in accordance with—and not contrary to—the relevant statute and other law.

Plaintiffs additionally contend that the October 2025 Memorandum violated the APA because USDA failed to consider an important aspect of the problem. However, the ABAWD work requirement waiver criteria are explicitly directed by statute, *see* 7 U.S.C. § 2015(o)(4), and the agency is not required to consider the additional factors that Plaintiffs claim here were overlooked, such as the ability of state agencies to administer program requirements. *Cf. Safe Haven Home Care, Inc. v. United States Dep't of Health & Hum. Servs*., 130 F.4th 305, 323 (2d Cir. 2025) (holding that where the government was authorized to approve a state Medicaid proposal based on certain enumerated considerations, the APA did not require evaluation of an additional consideration). Plaintiffs are therefore unlikely to succeed on the merits of any of their claims.

### C.    The Balance of Equities and Public Interest Weigh in Favor of the Defendant

The final two factors, balance of equities and the public interest, also weigh strongly against a preliminary injunction here. *See Nken v. Holder*, 556 U.S. 418, 434-435 (2009). Plaintiffs

---

[3] Plaintiffs' reliance on *Metro. Transportation Auth. v. Duffy*, 784 F. Supp. 3d 624, 669 (S.D.N.Y. 2025), is misplaced. *See* Pl. Br. at 16. There, the Court found that the federal government is limited by regulation in terminating an agreement. 784 F. Supp. 3d at 668. Plaintiffs have not identified any similar restrictions applicable here.

assert that these factors are satisfied because they seek to "preserve the status quo . . . to protect SNAP recipients classified as ABAWD from accruing countable months that can result in the loss or subsistence benefits." Pl. Br. at 20. But the requirement that New York ABAWDs comply with statutory requirements for SNAP benefit is not a harm. Rather, the public interest weighs in favor of implementation of statutory requirements duly promulgated by Congress to support the public welfare. *See Maryland v. King*, 567 U.S. 1301, 1303 (2012) (citation and internal quotation marks omitted) ("Any time a [government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."). Accordingly, the balance of the equities and public interest tip in favor of the government.

## II.    The Court Should Not Certify Plaintiffs' Proposed Class

### A.  The Rule 23 Requirements

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). To fall within this exception, Plaintiffs "must affirmatively demonstrate [their] compliance" with Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). As the Supreme Court has explained, "Rule 23 does not set forth a mere pleading standard." *Id.* Rather, "certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied[.]'" *Id.* at 350–51 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

To meet this "affirmative" burden of compliance with Rule 23, Plaintiffs must demonstrate the existence of each element required by Rule 23(a), *i.e.*, that (1) there are sufficiently numerous parties ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims of the named plaintiff are typical of those of the class ("typicality"); and (4) the named plaintiff will fairly and adequately protect the interests of the class ("adequacy of

representation"). Fed. R. Civ. P. 23(a); *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). "[A]ctual, not presumed, conformance with Rule 23(a) [is] indispensable." *Falcon*, 457 U.S. at 160.

The Second Circuit has also "'recognized an implied requirement of ascertainability in Rule 23,' which demands that a class be 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *In re Petrobras Securities*, 862 F.3d 250, 260 (2d Cir. 2017) (quoting *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015)). Although not a demanding standard, the "ascertainability requirement, as defined in this Circuit, asks district courts to consider whether a proposed class is defined using objective criteria that establish a membership with definite boundaries." *Petrobras Securities*, 862 F.3d at 269.

If each of these requirements (including ascertainability) under Rule 23(a) is met, then the proposed class must "satisfy at least one of the three requirements listed in Rule 23(b)." *Wal-Mart*, 564 U.S. at 345. Here, Plaintiffs seek certification under Rule 23(b)(2), which permits class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Plaintiffs bear the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements are met. *Myers v. Herz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010).

For the reasons discussed below, Plaintiffs fail to meet their burden of establishing ascertainability, commonality, typicality, or adequacy. Nor have Plaintiffs satisfied the requirements of Rule 23(b)(2).

### B. Plaintiffs Fail to Satisfy the Ascertainability Requirement

Plaintiffs' proposed class definition does not meet the implied requirement of ascertainability because it does not use objective criteria to establish membership with definite boundaries. *See Petrobras Securities*, 862 F.3d at 269.  Plaintiffs define the class as "all New York City SNAP recipients who are classified as ABAWD pursuant to USDA regulations who will become subject to ABAWD work requirements effective November 2, 2025." Pl. Br. at 21. This definition is too vague and indefinite because it includes numerous individuals whose membership status in the class would require individual inquiries. *See Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 97 (S.D.N.Y. 2010) ("Class membership must be readily identifiable such that a court can determine who is in the class and bound by its ruling without having to engage in numerous fact intensive inquiries.").

For example, Plaintiffs allege that Ms. Miguel is a SNAP recipient who is classified as ABAWD and will become subject to ABAWD work requirements effective November 2. Compl. ¶ 14. However, Ms. Miguel is currently unsure whether she is classified as ABAWD or not. *See* Miguel Decl. ¶¶ 22-24. This is likely to be the case for any given proposed class member. This ambiguity underscores the indefinite nature of the proposed class. Moreover, the ABAWD work requirements only apply to individuals who do not fall within certain exceptions. *See* 7 U.S.C. § 2015(d)(2)(B). Individuals like Ms. Miguel, who are responsible for the care of an incapacitated person, may be exempt from ABAWD work requirements. While Ms. Miguel has indicated that she anticipates it will be difficult for her to get in touch with the New York City HRA to seek an exemption, Miguel Decl. ¶ 24, she may very well succeed in obtaining one. Indeed, the HRA has already found Ms. Miguel exempt from Cash Assistance work requirements because she takes care of her husband. *Id.* ¶ 14. But again, the lack of clarity with respect to whether Ms. Miguel will be impacted by ABAWD work requirements demonstrates the indeterminate nature of the class.

18

Indeed, Plaintiffs emphasize that "many recipients will be confused and unsure" about whether they need to make an appointment with the HRA, Strom Decl. ¶ 14, and that "HRA notice language is often highly technical and confusing for the average reader, *id.* ¶ 12. As a result, most of the proposed class members, by Plaintiffs' own account, will not be certain whether they are subject to ABAWD work requirements. Because the proposed class is "indeterminate in some fundamental way," the Court should not certify the class. *Petrobras Securities*, 862 F.3d at 269.

### C. The Proposed Class Does Not Meet Rule 23(a)'s Commonality, Typicality, or Adequacy Requirements

Plaintiffs also fail to meet their burden of establishing commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a). Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury." *Wal-Mart*, 564 U.S. at 350. It is not enough for a plaintiff to identify broad questions that are common to the entire class. *See id.* at 350 ("What matters to class certification . . . is not the raising of common questions—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." (internal quotation marks omitted) (emphasis in original)). The Supreme Court has explained that the "commonality and typicality requirements of Rule 23(a) tend to merge." *Wal-Mart*, 564 U.S. at 349 n.5 (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157-58 n.13 (1982)). Both requirements "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart*, 564 U.S. at 349 n.5 (quoting *General Telephone*, 457 U.S. at 157-58 n.13).

Here, the variations within the proposed class undermine Plaintiffs' assertion of commonality and typicality. As discussed, Ms. Miguel is likely to be differently situated than

many others within the proposed class because she may be exempt from ABAWD work requirements. *See supra* Section II.B. In addition, Plaintiffs have not made any showing with respect to a common injury. *See* Pl. Br. at 23-24. Plaintiffs merely note that the "core questions in this case are whether USDA exceeded its lawful authority in prematurely terminating New York's ABAWD waiver, and whether its action was taken without consideration of important aspects of the problem . . . and failed to provide a reasoned explanation of its actions." *Id.* at 23. Plaintiffs then summarily conclude that these questions are common to the class, and that therefore they have satisfied the commonality requirement. *Id.* But simply identifying common questions, like whether the USDA exceeded its lawful authority, is insufficient to obtain class certification. *See Wal-Mart*, 564 U.S. at 350, 374. As the Supreme Court has explained, the commonality requirement "does not mean merely that [the proposed class members] have all suffered a violation of the same provision of law." *Id.* at 350. Plaintiffs therefore fail to meet their burden of demonstrating that all members of the proposed class will "suffer[] the same injury." *Id.*

Nor have Plaintiffs met the adequacy prong of Rule 23(a)(4). The adequacy requirement of Rule 23 is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Determining adequacy of representation . . . requires the Court to determine: (1) whether the named plaintiffs . . . have any conflicts of interest with other class members; and (2) whether the named plaintiffs . . . will prosecute the action vigorously on behalf of the entire class." *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 150 (D. Md. 2022) (internal quotation marks omitted); *accord Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Class representatives must "possess the same interest and suffer the same injury" as the class members, otherwise, they are "simply not eligible

to represent a class of persons who did allegedly suffer injury." *E. Tex. Motor Freight System, Inc.
v. Rodriguez*, 431 U.S. 395, 403, 405 (1977).

The same concerns regarding commonality and typicality likewise defeat the adequacy requirement. Although Plaintiffs claim that Ms. Miguel has no conflicts with any proposed class member, Pl. Br. at 25, they fail to demonstrate, by a preponderance of the evidence, that this is so. As discussed, Ms. Miguel may very well be exempt from ABAWD's work requirements, unlike many other members of the proposed class. If so, it is not clear that she will suffer any injury as a result of the USDA's decision. Accordingly, Ms. Miguel is "simply not eligible to represent a class of persons who did allegedly suffer injury." *See E. Tex. Motor Freight System, Inc.*, 431 U.S. at 404.

### D.  Plaintiffs Fail to Satisfy the Rule 23(b)(2) Requirements

For similar reasons, Plaintiffs also fail to meet the requirements of Rule 23(b)(2), which permits a class action when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Class certification under Rule 23(b)(2) is proper only when a "single injunction or declaratory judgment would provide relief to each member of the class." *Berni v. Barilla S.p.A.*, 964 F.3d 141, 146 (2d Cir. 2020) (internal quotation marks omitted). Stated differently, "if the proposed class includes members who are not at risk of injury based on the enforcement of the [EO] then injunctive relief sought on behalf of the class as a whole under Rule 23(b)(2) would be inappropriate." *Greater Chautauqua Federal Credit Union v. Quattrone*, No. 22 Civ. 2753 (MKV), 2025 WL 869729, at *12 (S.D.N.Y. Mar. 20, 2025); *see also Brown v. Kelly*, 609 F.3d 467, 482 (2d Cir. 2010) (denying Rule 23(b)(2) statewide class certification because proposed class definition includes members not at risk of injury by defendants).

As discussed, the Court would need to engage in individualized analysis to ensure that the relief sought would be appropriate for all of the members included in the proposed class. "The need for these individualized inquiries and the fact that the relief sought would be difficult, if not impossible, to apply on a classwide basis runs contrary to Rule 23(b)(2)." *Greater Chautauqua*, 2025 WL 869729, at *12*; see also Berni*, 964 F.3d at 146; *Waite v. UMG Recordings, Inc.*, No. 19 Civ. 10901, 2023 WL 1069690, at *9 (S.D.N.Y. Jan. 27, 2023). Here, the proposed class includes members, like Ms. Miguel, who may not actually be injured as a result of the USDA's October 2025 Memorandum (because, for example, they may be subject to an exemption). Similarly, the proposed class also includes those who may be more likely to find work or more easily make an appointment with HRA to discuss exemptions. Accordingly, Plaintiffs have failed to satisfy the inquiry under Rule 23(b)(2) for class certification.[4]

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for a temporary restraining order and preliminary injunction, and to certify a class.

---

[4] Should the Court nevertheless decide to grant Plaintiffs' request for class certification and request for injunctive relief, the scope of the relief should be limited to the proposed class. *See Trump v. CASA, Inc.*, 145 S. Ct. 2540 (2025) (emphasizing that relief is only available to the specific plaintiffs to a lawsuit).

Dated: New York, New York
        October 29, 2025

                                    Respectfully submitted,

                                    JAY CLAYTON
                                    United States Attorney for the
                                    Southern District of New York
                                    *Attorney for the Defendant*

                            By:     */s/ Rebecca L. Salk*
                                    MOLLIE KORNREICH
                                    REBECCA L. SALK
                                    Assistant United States Attorneys
                                    86 Chambers Street, 3rd Floor
                                    New York, New York 10007
                                    Tel: (212) 637-9074/2614

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), the undersigned counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 7,155 words.

*/s/ Rebecca L. Salk*
Assistant United States Attorney
